GILBERTSON, Chief Justice.
[¶ 1.] A South Dakota circuit court sentenced Rodney Scott Berget to death for the murder of corrections officer Ronald Johnson, a crime he committed while incarcerated at the South Dakota State Penitentiary in Sioux Falls. On direct appeal of that sentence, in State v. Berget (Berget I), this Court determined that the circuit court may have improperly considered, for sentencing purposes, statements made by Berget in a psychological evaluation procured to determine his competency to stand trial. 2013 S.D. 1, ¶¶92, 119, 826 N.W.2d 1, 28, 37. We remanded Berget’s death sentence for the limited purpose of resentencing “without the use of or consideration of’ the psychological evaluation unless Berget opted to call its author to testify, and otherwise “on the existing record.” Id. ¶¶ 118, 120, 826 N.W.2d at 37. Berget now appeals the circuit court’s amended judgment of conviction sentencing him to death. We affirm.
*49 Background
[¶ 2.] The details of Berget’s crime and the procedural posture of his first appeal are set out in Berget I, 2013 S.D. 1, ¶¶ 2-10, 826 N.W.2d at 8-10. This appeal concerns the limited remand instructed in Berget I and proceedings subsequent thereto. The relevant facts are provided below.
[¶ 3.] In Berget I, this Court affirmed Berget’s death sentence on eleven of twelve issues. See id. ¶ 121, 826 N.W.2d at 37. The twelfth issue regarded the circuit court’s potentially iinproper consideration of aggravating evidence in rendering Berget’s death sentence. Id. ¶¶91-118, 826 N.W.2d at 28-37. Specifically, we noted that after the sentencing hearing,[1] when the circuit court announced its sentence, the court indicated that it had considered Berget’s early acceptance of responsibility for the murder of Ronald Johnson as mitigation. Id. ¶ 92, 826 N.W.2d at 28. However, the circuit court then cited an admission Berget gave during a psychiatric evaluation, which was contained in a report to determine Ber-get’s fitness to stand trial. The evaluation had previously been sealed and was not admitted as evidence in the sentencing hearing. Id. It contained Berget’s admission to the psychiatrist, Dr. David Bean, that he pleaded guilty to Johnson’s murder because he “wish[ed] it wodld be over.” Id. The circuit court stated that this admission did not reflect the iptentionality that made early acceptance a mitigating factor. Id. On appeal, we agreed with Berget that the circuit court might have committed prejudicial error by improperly considering this admission as aggravating evidence. Id. ¶¶ 116-118, 826 N.W.2d at 36-37.
[¶ 4.] To address this error, this Court concluded its opinion with instructions: “Pursuant to SDCL 23A-27A-13(2), we remand to the circuit court for the purpose of conducting a sentencing without this error. Per this statute, it is to be conducted on the existing record without reference to, or considering of, the report of Dr. Bean.”[2] Id. ¶ 120, 826 N.W.2d at 37.
[¶ 5.] On the day after this Court handed down its opinion and judgment, the State filed a motion for a hearing consistent with the opinion of this Court. The State acknowledged in its motion that it would not object to Berget introducing the psychiatric report “with such supplemental direct and cross-examination testimony of the psychiatrist as Berget might choose to place on the record.” Berget filed a petition for rehearing on the appeal, which we subsequently denied by order entered January 22, 2013.
[¶ 6.] A month after we handed down our opinion and judgment, Berget sent a letter to the circuit court, pursuant to SDCL 15-12-21.1, requesting that it disqualify itself from the remanded proceeding on grounds of judicial bias. In his affidavit supporting recusal, Berget *50 claimed three instances of bias: (1) the circuit court had to find against Berget’s assertions of fact at sentencing or it would risk contradicting its findings of fact and jeopardizing the death sentence in the case of Berget’s co-defendant, Eric Robert, (2) the Supreme Court had found that the circuit court committed error in its presen-tence hearing verdict, and (8) the circuit court had rendered its sentencing decision “through legal analysis only.” The circuit court denied Berget’s request for recusal on February 22, 2013. The Presiding Circuit Judge of the Second Judicial Circuit entered an order on March 8, 2018, denying Berget’s formal recusal request. The Presiding Judge based the order on Ber-get’s waiver of his right to disqualify the circuit court, pursuant to SDCL 15-12-24, by him having already “submitted multiple arguments and proofs in support of motions” to the court prior to his request for recusal.
[¶ 7.] Berget also filed a demand for a new sentencing hearing to introduce new evidence. That evidence, allegedly obtainable only after his original sentencing, showed that “Berget has established a meaningful relationship with his son, his daughter-in-law, and his two grandchildren,” and that the relationship “has made a positive impact on the lives of [Berget’s] family, even while [Berget is] in prison for the rest of his life.” Berget argued, in spite of this Court’s clear directions on remand, that the circuit court “ha[d] the inherent power to grant a new [sentencing] hearing” and that his federal constitutional rights required it do so.
[¶ 8.] The circuit court held a motions hearing on Berget’s demand for a hearing on April 16, 2013. Berget repeatedly declined the circuit court’s offer to have Dr. Bean testify. He reasserted his federal constitutional law arguments and contention that the circuit court had the authority to grant a new sentencing hearing in the face of contrary remand directions by this Court. Berget further argued that our remand instructions were improper because we could not rely on SDCL 23A-27A-13(2) to justify our limited remand for resentencing and that our directions on remand were otherwise unclear. Finally, Berget reinforced his argument that his father-son relationship evidence was new and had not been withheld for dilatory reasons. The circuit court rejected Ber-get’s arguments by noting that our instructions on remand were clear, that as a circuit court it was bound to limit its jurisdiction on remand to those instructions, and that a new sentencing hearing would violate our directive. The circuit court declined to make a ruling on Berget’s constitutional arguments because it determined that they were outside its limited remand jurisdiction. After considering Berget’s offer of proof — and without further evidence to consider beyond the evidence, argument and allocution it considered in Berget’s original sentencing — the circuit court determined that another sentence hearing would serve no purpose given our remand instructions, and it orally denied Berget’s demand for a new sentencing hearing.
[¶ 9.] The circuit court entered a written order on May 7, 2013, denying Ber-get’s motions for a sentencing hearing, to introduce new mitigation evidence, and to disqualify itself. That same day, the court entered its amended presentence hearing verdict. Thereafter, both the State and Berget submitted proposed findings of fact and conclusions of law. After considering the proposed amended findings of fact and conclusions of law from Berget and the State, and the objections thereto, the circuit court notified the parties that it would adopt the State’s amended findings and conclusions in the court’s e-mail of June 7, 2013. The court’s amended findings of *51 fact and conclusions of law were entered that day. The court entered an amended judgment of conviction and sentence, and the death warrant, on June 24, 2018. Ber-get timely appealed. This Court entered an order for stay of execution on August 7, 2013.[3]
Analysis
[¶ 10.] Berget now raises three issues in appealing his resentence on remand. Berget’s first and second arguments derive from the circuit court’s denial of Berget’s demand for a new sentencing hearing. He argues the court erred (1) by failing to consider his newly discovered mitigation evidence in reimposing his death sentence and (2) by preventing him from being present and being able to allocute when it reimposed its sentence. Berget’s third argument is that the circuit court erred by refusing to recuse itself from resentencing. In addition to Berget’s issues, SDCL 23A-27A-12 requires that this Court make three determinations whenever a circuit court imposes the death penalty, specifically:
(1) Whether the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor; and
(2) Whether the evidence supports the jury’s or judge’s finding of a statutory aggravating circumstance as enumerated in § 23A-27A-1; and
(3)'Whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant.
Id.[4]
[¶ 11.] 1. Whether the circuit court was required to consider Berget’s new mitigation evidence in its judgment upon limited remand.
[¶ 12.] As noted above, Berget made an offer of proof at the remand motions hearing regarding the nature and scope of the alleged newly discovered mitigation evidence of Berget’s positive relationship with his son and his son’s family. Berget faults the circuit court’s exclusion of this evidence from its sentencing deliberation by advancing two theories. First, Berget challenges both the “clarity” of this Court’s instructions for a limited remand for resentencing in Berget I, 2013 S.D. 1, ¶¶ 118, 120, 826 N.W.2d at 37, and the statutory authority that we relied on, in part, to so limit the scope of the limited resentencing, id. ¶ 120 (citing SDCL.23A-27A-13(2)). Second, Berget asserts that even if there was statutory authority to support limiting the scope of remand, that limitation on the admission of his new mitigation evidence violated his Eighth and Fourteenth Amendment rights.
[¶ 13.] Upon review, “ ‘[a] [circuit] court’s evidentiary rulings are pre *52 sumed correct and will not be reversed unless there is a clear abuse of discretion.’ ” Wilcox v. Vermeulen, 2010 S.D. 29, ¶ 7, 781 N.W.2d 464, 467 (quoting Thompson v. Mehlhaff, 2005 S.D. 69, ¶21, 698 N.W.2d 512, 519-20). An abuse of discretion occurs when the circuit court exercises its discretion “ ‘to an end or purpose not justified by, and clearly against reason and evidence.’ ” St. John v. Peterson, 2011 S.D. 58, ¶ 10, 804 N.W.2d 71, 74 (quoting Mousseau v. Schwartz, 2008 S.D. 86, ¶ 10, 756 N.W.2d 345, 350). This Court, in turn, will not overturn the circuit court’s abuse of discretion unless that “error is ‘demonstrated ... [and] shown to be prejudicial error.’ ” State v. Smith, 1999 S.D. 83, ¶ 39, 599 N.W.2d 344, 353 (alteration in original) (quoting State v. Spiry, 1996 S.D. 14, ¶ 11, 543 N.W.2d 260, 263). We, however, review de novo the circuit court’s application of the law underlying the circuit court’s exercise of discretion. See State v. Rolfe, 2013 S.D. 2, ¶ 15, 825 N.W.2d 901, 905.
[¶ 14.] a. This Court’s authority to direct a limited resentencing upon remand.
[¶ 15.] Berget argues this Court’s remand instructions “somewhat perplexed” the circuit court. Berget attests that this “confusion is understandable” because the statute cited by the Court, SDCL 23A-27A-13(2), as additional authority for its limited resentencing instruction, was not proper authority on that point. Instead, noting the language of the statute, Berget believes this provision only authorizes a limited resentencing when the Court remands a death sentence for proportionality issues. Because this Court in Berget I affirmed each of the proportionality issues therein argued by Berget, 2013 S.D. 1, ¶¶ 18-31, 826 N.W.2d at 11-14, he contends that our limited remand and the subsequent limited resentencing violated state law.
[¶ 16.] First, regarding Berget’s assertion of “confusion” — nowhere in the transcript of the motions hearing or elsewhere on the record did the circuit court express confusion with this Court’s instructions. As the hearing transcript indicates, the court restated our directions, noted their clarity, and in the face of Berget’s constitutional assertions, adhered to them. Only Berget’s oral argument asserted any “confusion,” and did so as the basis of argument.
[¶ 17.] Whether or not this Court misconstrued SDCL 23A-27A-13 in citing it as additional authority for its limited remand instructions is immaterial. This Court has general statutory and constitutional authority to mandate the scope of review on limited remand. As we recently noted in State v. Piper (Piper III), 2014 S.D. 2, ¶ 9, 842 N.W.2d 338, 342, both SDCL 15-30-14 and 15-30-11 require the lower court to enforce our explicit instructions on remand. “ When the scope of remand is limited, the entire case is not reopened, but rather, the lower tribunal is only authorized to carry out the appellate court’s mandate.’ ” Piper III, 2014 S.D. 2, ¶ 11, 842 N.W.2d at 343 (quoting In re Conditional Use Permit Granted to Van Zanten, 1999 S.D. 79, ¶13, 598 N.W.2d 861, 864).
[¶ 18.] Article V of the South Dakota Constitution requires this deference and clear adherence to this Court’s remand instruction to constitutionally function. Otherwise, each circuit court would become a supreme court unto itself. See Piper III, 2014 S.D. 2, ¶ 10, 842 N.W.2d at 343 (“If the circuit court’s original jurisdiction could spontaneously resurrect on re-mittal, the defined roles of our tiered judicial system ... and the judicial certainty and efficiency they foster would be nullified.”).
*53 [¶ 19.] Given this binding authority, we conclude this Court had the ability pursuant to state constitutiohal and statutory law to direct a limited resentencing in Berget I and the circuit court was to follow, and did follow, our directions in accordance with that authority.
[¶ 20.] b. The federal constitutionality of the limited resentencing.
[¶ 21.] Berget contends the Eighth and Fourteenth Amendments nevertheless override the Court’s authority to limit resentencing to exclude newly discovered mitigation evkfence. Because the Court’s authority to instruct a limited re-sentencing in Berget / was derived from Article V of our state constitution and from statute, Berget’s federal constitutional arguments are in essence challenges to the constitutionality of these provisions as applied. His burden is thus:
There is a strong presumption that the laws enacted by the legislature are constitutional and the presumption is rebutted only when it clearly, palpably and plainly appears that the statute violates a provision of the constitution. Further, the party challenging the constitutioriality of a statute bears the burden of proving beyond a reasonable doqbt that the statute violates a state or federal constitutional provision.
Vilhauer v. Horsemens’ Sports, Inc., 1999 S.D. 93, ¶ 16, 598 N.W.2d 525, 528 (quoting Green v. Siegel, Barnett & Schutz, 1996 S.D. 146, ¶ 7, 557 N.W.2d 396, 398). “ ‘A defendant cannot claim that a statute is unconstitutional in some of its reaches if it is constitutional as applied to him.’ ” State v. Jensen, 2003 S.D. 55, ¶ 13, 662 N.W.2d 643, 648 (quoting City of Pierre v. Russell, 89 S.D. 70, 74, 228 N.W.2d 338, 341 (1975)). Berget, therefore, must establish beyond a reasonable doubt that the narrow scope of our limited remand violated the United States Constitution. We review this constitutional contention de novo. See Green, 1996 S.D. 146, ¶ 7, 557 N.W.2d at 398 (citing Kyllo v. Panzer, 535 N.W.2d 896, 897 (S.D.1995)).
[¶22.] A proper analysis of Berget’s assertion of error requires a summary of Supreme Court case law on the evolution of capital sentencing rights. The roots of capital “mitigation evidence” are found in the Supreme Court case that reestablished the death penalty as viable under the Eighth Amendment, Gregg v. Georgia, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976). The Court in Gregg clarified that the prior case, which effectively abolished the death penalty nationwide, Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), did not hold that the death penalty was a per se violation of the Eighth Amendment. 428 U.S. at 188, 96 S.Ct. at 2932. Instead, “Furman held that [the death penalty] could not be imposed under sentencing procedures that created a substantial risk that it would be inflicted in an arbitrary and capricious manner.” Id. To prevent this, the Court began by applying the common precept of sentencing that in mitigation or aggravation, “ ‘justice generally requires ... that there be taken into account the circumstances of the offense together with the character and propensities of the offender.’ ” Id. at 189, 96 S.Ct. at 2932 (quoting Pennsylvania ex rel. Sullivan v. Ashe, 302 U.S. 51, 55, 58 S.Ct. 59, 61, 82 L.Ed. 43 (1937)). The Court then acknowledged that much of this evidence, although relevant for sentencing purposes, would be properly excluded as prejudicial or irrelevant on the question of guilt. Id. at 190, 96 S.Ct. at 2933. Because a jury “cannot be expected to consider certain evidence before it on one issue, but not another,” id. at 190 n. 40, 96 S.Ct. at 2933 n. 40 (citations omitted), the Court suggested solving the challenge through a bifurcated trial, wherein a *54 determination of guilt occurs first, and then, if the defendant is found guilty, a determination of whether a death sentence will issue, see id. at 190-92, 96 S.Ct. at 2933-84.
[¶23.] Although Gregg provided a starting point on the definition of admissible mitigation evidence, its common sentencing definition was soon broadened. Because of the severity of the death penalty, a plurality of the United States Supreme Court determined “the Eighth and Fourteenth Amendments require that the sentencer, in all but the rarest kind of capital case, not be precluded from considering, as a mitigating factor, any aspect of a defendant’s character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death.” See Lockett v. Ohio, 438 U.S. 586, 604, 98 S.Ct. 2954, 2964-65, 57 L.Ed.2d 973 (1978) (second emphasis added) (footnote omitted). The sentencing authority’s broad consideration of defendant-specific characteristics was viewed as a bulwark against the arbitrary and capricious use of the death penalty and ensured that “the death penalty would be imposed in a more consistent and rational manner.” Id. at 601, 98 S.Ct. at 2963 (citation omitted). Such liberality achieved this consistency by providing a “meaningful basis for distinguishing the ... cases in which [the death penalty] is imposed from ... the many cases in which it is not.” Id. (citing Gregg, 428 U.S. at 188, 96 S.Ct. at 2932). That plurality holding became the majority position in Eddings v. Oklahoma, 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982). “By holding that the sentence in capital cases must be permitted to consider any relevant mitigating factor, the rule in Lockett recognizes that a consistency produced by ignoring individual differences is a false consistency.” Id. at 112, 102 S.Ct. at 875 (adopting the plurality opinion in Lockett). Accordingly, at sentencing, “virtually no limits are placed on the relevant mitigating evidence a capital defendant may introduce concerning his own circumstances.” See Payne v. Tennessee, 501 U.S. 808, 822, 111 S.Ct. 2597, 2607, 115 L.Ed.2d 720 (1991).
[¶ 24.] The sentencing authority must then consider all of the relevant mitigating evidence admitted at sentencing. “Just as the State may not by statute preclude the sentencer from considering any mitigating factor, neither may the sentencer refuse to consider, as a matter of law, any relevant mitigating evidence.” Eddings, 455 U.S. at 113-14, 102 S.Ct. at 876-77. “The sentencer, and the Court of Criminal Appeals on review, may determine the weight to be given relevant mitigating evidence. But they may not give it no weight by excluding such evidence from their consideration.” Id. at 114-15, 102 S.Ct. at 877.
[¶25.] Berget argues this broad scope of relevant mitigating evidence requires that we adopt his position. However, the concern in this case is narrower and regards a matter outside the bifurcated trial procedure established in Gregg to which the requirements of a broad scope of relevant mitigating evidence and their mandated consideration by the sentencing authority (Lockett and Eddings) explicitly apply. The issue, rather, is whether the Eighth and Fourteenth Amendments prohibit this Court from narrowing the circuit court’s jurisdiction, upon a limited remand for resentencing in a capital case, such that the court could not consider relevant evidence for mitigation purposes discoverable only after remand.[5]
*55 [¶ 26.] Berget relies on Skipper v. South Carolina, 476 U.S. 1, 106 S.Ct. 1669, 90 L.Ed.2d 1, (1986), which held that new, relevant mitigating evidence may be introduced at least through a capital defendant’s period of incarceration while awaiting trial. In that case, Skipper and his former wife testified during the sentencing phase that he had “conducted himself well during the 7½ months he spent in jail between his arrest and trial” and had earned his high school diploma. Id. at 3, 106 S.Ct. at 1670. He asserted that this behavior was indicative of his future conduct in custody and that his sentence should therefore have been reduced to life imprisonment. Id. In further support, Skipper sought to introduce testimony from jailers and a “regular visitor” to the jail that he had “made a good adjustment,” indicating his future adaptability to prison life. Id. The sentencing court ruled that such evidence was irrelevant and therefore inadmissible, citing state case law that a defendant’s ability to adjust to life behind bars could not be relevant to capital sentencing. Id. The sentencing jury subsequently sentenced Skipper to death. Id. On appeal, Skipper asserted that the sentencing court had committed constitutional error, pursuant to Lockett and Eddings, by excluding the relevant, mitigating testimony of the jailers and the visitor. Id.
[¶ 27.] The Supreme Court agreed with Skipper. While the Court admitted that “any such inferences” arising out of the “good adjustment” testimony “would not relate specifically to petitioner’s culpability for the crime he committed,” the Court found that this testimony nevertheless provided mitigation inferences “in the sense that [the inferences] might serve ‘as a basis for a sentence less than death.’ ” Id. at 4-5, 106 S.Ct. at 1671 (quoting Lockett, 438 U.S. at 604, 98 S.Ct. at 2964). The Court implied that this “basis for a sentence less than death” arose out of its previous holding that “evidence that a defendant would in the future pose a danger to the community if he were not executed may be treated as establishing an ‘aggravating factor’ for purposes of capital sentencing.” Id. (citing Jurek v. Texas, 428 U.S. 262, 275, 96 S.Ct. 2950, 2958, 49 L.Ed.2d 929 (1976) (opinion of Stewart, Powell, and Stevens, JJ.)). The Court reasoned that if evidence of a future danger could always be admissible as aggravating evidence, then evidence indicating the inverse-that a defendant “would not pose a danger if spared (but incarcerated)” — was applicable to death penalty cases generally as a “potentially mitigating” factor. Id. at 5, 106 S.Ct. 1669. As such a factor, it “[could] not be excluded from the sentencer’s consideration.” Id. The Court concluded, “ ‘any sentencing authority must predict a convicted person’s probable future conduct when it engages in the process of determining what punishment to impose.’ ” Id. at 5, 106 S.Ct. at 1671 (quoting Jurek, 428 U.S. at 275, 96 S.Ct. at 2958). Because the sentencing court excluded the future conduct testimony of the jailers and visitor from the sentencing jury, the Court determined the sentencing court had violated Skipper’s Eighth Amendment right to present all mitigating evidence. See id. at 4, 106 S.Ct. at 1671.
[¶ 28.] Evidence of Berget’s newfound relationship with his son and his son’s family conceivably could have been relevant evidence that Berget would not pose a danger in prison if spared, particularly under Lockett’s broad instruction that “any aspect of [the] defendant’s character ... that the defendant proffers as a basis for a sentence less than death” can be mitigating information. 438 U.S. at 604, *56 98 S.Ct. at 2964-65. Taking Skipper and Lockett together, then, Berget’s relationship may have been evidence the court could not have excluded from its consideration if Berget offered it at any point prior to completion of the sentencing portion of the trial. See Skipper, 476 U.S. at 5, 106 5.Ct. at 1671.
[¶ 29.] Berget’s constitutional argument, however, relies on extending the window for unconstitutional exclusion of new mitigation evidence further, to include mitigating information discoverable only after the original sentencing and offered before resentencing.[6] To find authority supporting this proposition, Berget relies on the Skipper Court’s instructions on remand. See id. at 8, 106 S.Ct. at 1673 (“The resulting death sentence cannot stand, although the State is of course not precluded from again seeking to impose the death sentence, provided that it does so through a new sentencing hearing at which petitioner is permitted to present any and all relevant mitigating evidence that is available.” (Emphasis added.)). The Court, however, did not clarify whether it meant “all relevant mitigation evidence that is available” on the existing record at the original sentencing or on the record that could be developed up to re-sentencing.
[¶30.] Regardless of the Court’s intent, that instruction is not appropriate authority to support Berget’s claim since his case is readily distinguishable. As with all authoritative case precedent, the result in Skipper and “those portions of the opinion necessary to that result” are binding. See Seminole Tribe of Florida v. Florida, 517 U.S. 44, 67, 116 S.Ct. 1114, 1129, 134 L.Ed.2d 252 (1996). The Skipper Court’s instruction of a new sentencing hearing was the necessary result of the sentencing court’s error in excluding mitigation evidence from a sentencing jury’s consideration, thereby tainting the subsequent sentencing hearing. A new, full sentencing hearing was “necessary” because it would be required to probe the value of the wrongly excluded testimony, since its contribution to the sentencing authority’s weighing[7] of mitigating and aggravating factors was otherwise undefined. Consequently, the sentencing authority could have given the wrongly excluded mitigating factor such weight that it alone was grounds for a life sentence.
[¶31.] In Berget’s case, the apparent error was very different. Unlike Lockett, Eddings and Skipper, the circuit court here did not improperly exclude evidence from the sentencing hearing, but only improperly considered evidence (if it did so at all) after the hearing was completed, during its deliberation. See Berget I, 2013 S.D. 1, ¶ 119, 826 N.W.2d at 37. The sentencing hearing itself was not tainted because Berget exercised the unrestricted opportunity to introduce all *57 mitigating evidence he desired.[8] Furthermore, once the Dr. Bean report was excluded, the remaining evidence and factors in mitigation ahd aggravation remained unchanged from those considered by the circuit court in the initial sentencing hearing. Therefore, we determined that a limited resentencing on the prior record — that merely struck the offensive evidence or permitted its elaboration by Berget through Dr. Bean — would be sufficient to correct this error on remand.[9]
*58 In directing a limited remand, we presume the circuit courts “know the law and [will] apply it in making [their] decisions.” State v. Page, 2006 S.D. 2, ¶ 27, 709 N.W.2d 739, 754 (quoting Walton v. Arizona, 497 U.S. 639, 653, 110 S.Ct. 3047, 3057, 111 L.Ed.2d 511 (1990)). “We have recognized [ ] that South Dakota law imposes no specific standard of proof in regard to mitigation.” Id. ¶ 50, 709 N.W.2d at 758 (citing Rhines II, 2000 S.D. 19, ¶ 39 n. 9, 608 N.W.2d at 312 n. 9). The limited resentencing consequently reflected our preference, in this instance, not to reweigh the aggravating and mitigating evidence without the offending concern ourselves, but to have the sentencing authority efficiently correct the limited error. Because of these substantial differences, Skipper does not control Berget’s argument.[10]
[¶ 32.] The Supreme Court has not determined, in Skipper or otherwise, that a capital defendant has a categorical constitutional right to introduce new mitigation evidence discovered after a sentencing hearing in which the defendant was given the opportunity to present all mitigation evidence he desired. It has also not determined whether a remand for a limited resentencing in a capital case that effectively excludes such newly discovered mitigation evidence is constitutionally invalid. On both issues, lower courts have attempted to fill that void. Berget and the State each rely on different authorities reflecting a split in opinion.
[¶ 33.] Berget contends Davis v. Coyle (Davis V), 475 F.3d 761 (6th Cir.2007), provides persuasive authority. On an appeal of a denial of a petition for writ of habeas corpus, Davis sought to challenge his Ohio death sentence. The Ohio Supreme Court had affirmed Davis’s convictions but vacated his death sentence because, as with Berget I, the sentencing authority (a three-judge panel) may have *59 considered improper aggravating factors in its sentence. Id. at 763. The sentencing court, on remand for “a new sentencing trial” as instructed by the appellate court, considered only the record of the trial and first sentencing proceeding. The court refused to consider Davis’s motion to withdraw his jury waiver and to introduce new mitigation testimony concerning his post-prison behavior and updated psychological profile. Id. at 769. The Ohio Court of Appeals affirmed the court’s re-sentencing, finding that “it is basic law that a reversal and remand to the trial court for further proceedings has the effect of reinstating the cause in the trial court in status quo ante.” Id. at 770 (quoting State v. Davis (Davis III), No. CA89-09-123, 1990 WL 166137, *2 (Ohio Ct.App. Oct. 29,1990)). The appeals court further noted that because the error requiring remand “ ‘occurred at the deliberative state of the proceedings, after the evidence had been submitted to the court,’ ” the sentencing court need not consider additional evidence. Id. The Ohio Supreme Court affirmed on slightly different grounds, finding that unlike Skipper, Davis had the opportunity to present all then-available mitigation evidence at his first sentencing trial and was therefore not denied the “individual consideration of relevant mitigating factors” that was the crux of Skipper, Eddings, and Lockett. Id. (quoting State v. Davis (Davis IV), 63 Ohio St.3d 44, 584 N.E.2d 1192, 1195 (1992)). Moreover, the Court found that Skipper only applied to mitigation evidence of a good prison record between a defendant’s arrest and trial, and not to post-trial prison behavior. Id. at 772 (citing Davis IV, 584 N.E.2d at 1195).
[¶ 34.] The Sixth Circuit rejected this collected reasoning. The court primarily drew comparisons between Davis’s case on resentencing and Skipper at sentencing— both prosecutors introduced evidence or argument of defendants’ dangerousness behind bars and both defendants faced “future dangerousness” as the “central” aggravating factors in their sentences. Compare Skipper, 476 U.S. at 2, 3, 106 S.Ct. at 1670, with Davis V, 475 F.3d at 771-72. The court determined that the only way to distinguish the two cases was that Skipper involved sentencing and Davis’s case involved resentencing. See id. at 773. The court found that to be an unreasonable basis for denying the application of Skipper to Davis’s case. Id. The Davis court also concluded that the Ninth and Eleventh Circuits already supported the application of Skipper to resentenc-ing.[11] Accordingly, the court found that *60 only a new, full resentencing hearing could permit the proper weighing of the improperly excluded new mitigation testimony. Id. at 774-75.
[¶ 35.] The State, in contrast, cites the Ohio Supreme Court case of State v. Roberts, 137 Ohio St.3d 230, 998 N.E.2d 1100 (2013), cert. denied, — U.S. -, 134 S.Ct. 1554, 188 L.Ed.2d 569 (2014). In Roberts, on direct appeal, the Court affirmed Roberts’s convictions of aggravated murder and both aggravated circumstances therein, but remanded for limited resentencing because the trial judge engaged in ex parte communications with the prosecutor in drafting the sentencing opinion. Id. at 1104. The Court specified on remand that Roberts had a right to allo-cute and that the trial court was to reweigh the evidence and “personally prepare an entirely new penalty opinion.” Id. On remand, Roberts filed a motion to introduce new mitigation evidence, including prison records, a disability claim file, an affidavit from Roberts’s psychologist offering a preliminary diagnosis, and a letter about Roberts from her son. Id. at 1104-05. That motion was denied. Id. at 1105. The trial court heard Roberts’s allocution and sentenced her to death.
[¶ 36.] On appeal, the Court rejected Roberts’s assertion that the sentencing court erred in precluding her from presenting new mitigating evidence on remand. The Court distinguished Skipper, Lockett, and Eddings as inapplicable because those cases “involved a situation where the capital sentencer was prohibited, in some form or another, from considering relevant mitigating evidence at trial.... [N]o relevant mitigating evidence was ever excluded from consideration during [Roberts’s] penalty phase.’ ” Id. at 1107 (first two alterations in original) (quoting State v. Chinn, 85 Ohio St.3d 548, 709 N.E.2d 1166, 1180-81 (1999)). “In other words, neither Lockett nor any of its progeny required the trial court to reopen the evidence after an error-free evidentiary hearing had already taken place.” Id. at 1108 (citing Chinn, 709 N.E.2d at 1180-81). Instead, the error in question occurred after the evidentiary sentencing proceeding had closed; therefore, “the trial court was required to proceed on remand from the point at which the error occurred[.]” Id. at 1110 (quoting Chinn, 709 N.E.2d at 1181). Otherwise, the Court would create an unauthorized “right to update one’s mitigation. Such a right has no clear basis in Lockett or its progeny.” Id. at 1108.
[¶ 37.] Beyond an inability to reconcile Lockett, Eddings, and Skipper to this alleged right to update one’s mitigation evidence, the Court rejected Roberts’s argument as causing untenable results. The Court reasoned that:
Establishing a right to update mitigation could result in arbitrary distinctions between similarly situated capital defendants. A defendant who had an error-free mitigation hearing could not update his mitigation — no matter how compelling the new mitigation that might be available to him — if the trial judge committed no error after the mitigation hearing that called for the case to be remanded. But another defendant, whose mitigation hearing was equally free of error, would have the right to update his mitigation in the event that a *61 posthearing sentencing error took pjace that required a remahd.

Id.

[¶ 38.] Both Davis V ahd Roberts provide reasoning for whethef or not Shpreme Court precedent gives ipdirect authority that a court, on limited resentencing, must consider new mitigation evidence. Two key factors, however, point to Roberts being the persuasive authority.
[¶ 39.] First, the Sixth Circuit based its decision in Davis V on the ¡salient aggravating circumstance shared ⅛ both Davis and Skipper. “[T]he core of the analysis in Skipper reflects the Court's tmderstand-ing that the right of a defendaht to present evidence of good behavior in prison is particularly relevant when a prediction of future dangerousness figures centrally in a prosecutor’s plea for impositiqh of the death penalty.” Davis V, 475 F.3d at 771 (emphasis added). “Although there could conceivably be some question about the relevance of such evidence in the abstract, the record in this case establishes without doubt that [the newly discovered evidence on remand] was highjy relevant to the single aggravating factor relied upon by the state — that future dangerousness should keep Daws on heath row.” Id. at 773 (emphasis added). Therefore, according to the court, Skipper was súbstantively distinguishable from Davis’s situation “solely on the basis of timing,” qnd it applied Skipper to require a full resehteric-ing. See id.
[¶40.] In contrast, the two statutory aggravating circumstances under which the court sentenced Berget to death did not relate to his future dangeroushess per se, but to the nature of the murder he committed. See SDCL 23A-27A-1(7), (8) (“[t]he offense was committed against a[n] ... employee of a corrections institution,” and “[t]he offense was committed by a person in ... the lawful custody of ... a place of lawful confinement”). These statutory aggravating circumstances do not include future dangerousness as a consideration. Moreover, the circuit court considered Berget’s future dangerousness as one among four other non-statutory aggravating circumstances. The court’s original and amended presentence hearing verdicts indicate the court also took into account: (1) the violent nature of Berget’s attack on Johnson, (2) that a life sentence would have no deterrent effect on other inmates similarly situated to Berget, (3) that Ber-get had a long criminal history of ever-increasing violence outside of prison, and (4) that Berget showed a lack of remorse to Johnson’s family. Berget’s future dangerousness undoubtedly played a role in the court’s penalty analysis, but that aggravating concern did not predominate as it did in Davis or Skipper. Since this “central role” is the basis of the Sixth Circuit’s reasoning in Davis V, Berget’s reliance on that case is questionable.
[¶ 41.] Second, and most importantly, however, the negative consequences of adopting Berget’s position, as noted in Roberts, make Roberts the persuasive authority. For instance, as noted above, under SDCL 23A-27A-12(2) we are statutorily charged with an independent determination of “whether the evidence supports ... [a] judge’s finding of a statutory aggravating circumstance as enumerated in § 23A-27A-1.” Because of this duty, were we to accept Berget’s rationale that Skipper and Davis V require consideration of newly discovered post-trial mitigation evidence in every capital case, this Court would open the door to becoming the initial trier of fact for evidence never presented or considered by the circuit court. Under Berget’s rationale, this Court, when presented with new post-trial evidence upon appeal, “could be considered a ‘sentencer’ for *62 Lockett purposes.” See Roberts, 998 N.E.2d at 1108-09. This, again, would thwart the judicial economy of our tiered judicial system. See Piper III, 2014 S.D. 2, ¶ 10, 842 N.W.2d at 343. It would also no longer make the original sentencing proceeding the “main event” but improperly relegate it to a mere “tryout on the road.” See Gregory v. Solem, 449 N.W.2d 827, 833 (S.D.1989) (citing Wainwright v. Sykes, 433 U.S. 72, 90, 97 S.Ct. 2497, 2508, 53 L.Ed.2d 594, 610 (1977)).
[¶ 42.] Additionally, the Roberts Court’s finding of arbitrary discrepancies that may manifest between similarly situated capital defendants simply because of a posb-sentence error in deliberation is clearly applicable in this case. No sentencing error existed in the case of Ber-get’s co-defendant, Eric Robert. See State v. Robert, 2012 S.D. 60, 820 N.W.2d 136. Had Robert proceeded with his case and tried to raise a similar argument of post-sentencing discovery of evidence he deemed to be mitigating, under the rationale now advanced by Berget, Berget could obtain a second sentencing hearing while Robert could not. Therefore, the circumstances of their offenses and the individual “character and propensities” of each defendant — the fundamental concerns of sentencing, see Gregg, 428 U.S. at 189, 96 S.Ct. at 2932 (citations omitted) — would not result in their distinct sentencing treatments; they would result from a potential, extraneous court error that occurred after sentencing. That strikes at the heart of Lockett’s holding that the death penalty should be imposed “in a more consistent and rational manner[,]” based on an analysis of the fundamental concerns of sentencing. See Lockett, 438 U.S. at 601, 605, 98 S.Ct. at 2963, 2965.
[¶ 43.] It is that very interest in achieving a “more rational and equitable administration of the death penalty” that the Supreme Court found to be the basis for allowing states the “authority to set reasonable limits upon the evidence a defendant can submit, and to control the manner in which it is submitted[,]” including mitigation evidence, in capital cases. See Oregon v. Guzek, 546 U.S. 517, 526, 126 S.Ct. 1226, 1232, 163 L.Ed.2d 1112 (2006). A reasonable limit is one that we impose today that avoids the arbitrary outcomes and judicial inefficiency noted in Roberts and reinforces an appellate court’s authority to instruct a limited remand.
[¶ 44.] The Supreme Court’s ruling in Guzek is also instructive in a broader sense. In Guzek, the issue relevant to this case was whether the Eighth and Fourteenth Amendments granted Guzek the right to introduce new evidence of his innocence at his sentencing hearing— namely, that he was not present at the scene of the crime. Id. at 523, 126 S.Ct. at 1230. The Court rejected the Oregon Supreme Court’s broadening of Lockett to provide an Eighth Amendment right for Guzek to introduce newly discovered evidence of his innocence at a sentencing hearing. Id. at 523, 126 S.Ct. at 1230-31. The Court grounded its ruling on three conclusions. First, the Court noted that, fundamentally, “evidentiary concerns” are different between guilt and sentencing phases, with the former concern asking whether the defendant committed the crime and the latter asking how the act was committed. Id. at 526, 126 S.Ct. at 1232. Second, the Court found that “the parties previously litigated the issue to which the evidence is relevant — whether the defendant committed the basic crime. The evidence thereby attacks a previously determined matter in a proceeding at which, in principle, that matter is not at issue. The law typically discourages collateral attacks of this kind.” Id. (citing Allen v. McCurry, 449 U.S. 90, 94, 101 S.Ct. 411, 415, 66 L.Ed.2d 308 (1980)). *63 Third, the Court determined that any “negative impact of a rule restricting defendant’s ability to introduce new alibi evidence is minimized by the fact that Oregon law gives the defendant the right to present to the sentencing jury all the evidence of innocence from the original trial regardless.”[12] Id. at 526-27, 126 S.Ct. at 1233 (citing Or.Rev.Stat. § 138.012(2)(b) (2003)). The Court summarized its analysis by holding, “The legitimacy of these trial management and evidentiary considerations” and the “minimally adverse impact the restriction would have” on defendant’s ability to present his case indicated the Eighth Amendment was not violated. Id. at 527, 126 S.Ct. at 1233.
[¶ 45.] Our balancing in this case and the balancing conducted by the Supreme Court in Guzek to reject a broadening of Lockett are similar because both defendants’ arguments implicated the same court management interest. Berget seeking a new sentencing hearing by effectively invoking a “right to update one’s mitigation” is akin to Guzek seeking to treat the sentencing hearing as a second guilt trial by invoking a “right to reconsideration” of guilt at sentencing. See Guzek, 546 U.S. at 525, 126 S.Ct. at 1232 (citations omitted). If the Court were to adopt Berget’s position, the Court would establish the incentive to turn a limited resentencing into a full-fledged, second sentencing hearing by seeking out all newly discoverable mitigation evidence conceivable, again no longer making the original sentencing proceeding the “main event” but consigning it to a mere “tryout on the road.” See Gregory, 449 N.W.2d at 833 (citation omitted). It is also more than conceivable that Berget may claim new, positive relationships with family members, fellow prisoners, or strangers for the remainder of his life if this Court permits each assertion of a relationship to be grounds for a new sentencing hearing or grounds for ignoring our limited remand instructions.
[¶ 46.] Accordingly, Lockett, Eddings, and Skipper are clearly distinguishable from the present case. No binding authority requires under the Eighth Amendment that a resentencing authority consider newly discovered, otherwise-admissible mitigation evidence, when the defendant had a full and unrestricted opportunity to present mitigation evidence at the initial sentencing. Given the negative consequences articulated above, Guzek supports our instructions in Berget I. See Guzek, 546 U.S. at 526, 126 S.Ct. at 1232. These negative consequences include the lack of finality, the arbitrariness that a right to update his mitigation would inject into death penalty jurisprudence, and the destruction of the appellate two-tiered judicial system and the competencies it fosters. Therefore, we follow Roberts, 998 N.E.2d at 1108-09, and decline to follow Davis V, 475 F.3d at 773, Creech, 947 F.2d at 881-82, and Sivak, 731 P.2d at 197-98. Preventing these discrepancies and dysfunctions clearly is a rational basis for excluding newly discovered mitigation evidence from the limited remand for resen-tencing in this case. Because Berget is *64 unable to present persuasive authority supporting his position, he has failed to meet his onerous burden of proving beyond a reasonable doubt that this Court’s statutory and state constitutional authority to order limited remand violated the Eighth and Fourteenth Amendments in this case. Accordingly, the circuit court did not commit legal error and abuse its discretion in following this Court’s instruction on resentencing.[13]
*65 [¶ 47.] 2. Whether the circuit court’s resentencing procedure met statutory and constitutional requirements concerning Berget’s presence at components of the sentencing process and allocution.
[¶ 48.] If the Court’s limited re-sentencing instructions pass constitutional muster, Berget drgues that the circuit court nevertheless erred by not having granted him other rights available at sentencing generally — his rights to be physically present in the courtroom and to allo-cute once more before resentencing. These issues are questions of law and are therefore subject to de novo review. See Pete Lien & Sons, Inc. v. City of Pierre, 1998 S.D. 38, ¶ 5, 577 N.W.2d 330, 331 (per curiam).
[¶ 49.] a. The legality of the circuit court’s entry of its sentence.
[¶50.] In support of this argument, Berget interprets a number of diverse authorities from federal and state sources. Berget cites Article VI, § 7 of the South Dakota Constitution, whiph provides, in pertinent part, that “[i]n aÜ cHminal prosecutions the accused shall have the right to defend in person and by counsel; ... to meet the witnesses against him face to face....” He goes on to reference SDCL 23A-39-1, which defines this right farther by mandating that “[a] defendant shall be present at his arraignment, at the time of his plea, at every stage of his trial including the impaneling of the jury and the return of the verdict, and at the imposition of sentence, except as provided by §§ 23A-39-2 and 23A-39-3.” Because these last exceptions are not applicable, and because a defendant’s presence is required “at every stage of his trial,” up to and including “the imposition of sentence,” Berget contends his state constitutional rights were violated by his absence when the court reimposed its sentence. Berget argues that federal authority is also persuasive on this issue because he believes that SDCL chapter 23A-39 was modeled after Rule 43 of the Federal Rules of Criminal Procedure. Cf. Jacquot v. Rozum, 2010 S.D. 84, ¶ 15, 790 N.W.2d 498, 503 (“This Court routinely looks to other courts’ decisions for analytical assistance in interpreting a South Dakota rule of civil procedure that is equivalent to a Federal Rule of Civil Procedure.”).
[¶ 51.] On this last point, Berget is incorrect. The federal rule and SDCL chapter 23A-39, while containing some similarities, also contain numerous differences of significance. For example, SDCL 23A-39-3 deals with appearances by corporations faced with criminal prosecutions, a subject not addressed by the federal rule. The source of SDCL 23A-39 traces its roots back to our earliest criminal code while still a Territory. See Dakota Rev. Code Crim. P. §§ 237, 294 (1877). The current version was enacted as part of the general revision of our Criminal Code in 1978, again with significant differences from the federal rule both in subject matter and in phraseology. See 1978 S.D. Sess. Laws ch. 178, § 485. Therefore, the persuasive authority of federal courts’ interpretations of Federal Rule 43 language is negligible.
[¶ 52.] For case law interpreting SDCL 23A-39-1, Berget cites Kost v. *66 State, 344 N.W.2d 83 (S.D.1984).[14] In that case, Kost brought a second petition for habeas corpus after having been found guilty by a jury of first-degree manslaughter and sentenced to life imprisonment. Id. at 84. The sole issue was whether the trial court denied Kost’s due process rights when Kost was not present at three discussions in chambers, even though his attorney waived his right to be present each time. Id. at 84. This Court began its discussion by noting that a criminal defendant’s right to be present flows from state statutory and constitutional authority, as well as the Sixth Amendment to the United States Constitution. Id. (citations omitted). The scope of that due process right “requires the defendant ‘to be present in his own person whenever his presence has a relation, reasonably substantial, to the fulness [sic] of his opportunity to defend against the charge.’ ” Id. (quoting Snyder v. Massachusetts, 291 U.S. 97, 105-06, 54 S.Ct. 330, 332, 78 L.Ed. 674, 678 (1934), overruled on other grounds by Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964)). See also Kentucky v. Stincer, 482 U.S. 730, 745, 107 S.Ct. 2658, 2667, 96 L.Ed.2d 631 (1987) (holding that the right to be present is “not guaranteed when presence would be useless, or the benefit but a shadow”). Accordingly, this Court determined that the constitutional and statutory right, conditioned on Snyder, required that “[a] defendant must be present when his presence is related to an opportunity to defend himself against the criminal charge.” Kost, 344 N.W.2d at 86. This Court equated any other failure to be present, even though it may violate the plain language of the statute, to be harmless error. Id. at 85-86 (citing State v. Rosales, 302 N.W.2d 804, 807 (S.D.1981)). The circuit court’s judgment was affirmed based on this harmless error analysis. Id. at 86.
[¶ 53.] Applying a similar analysis, Berget’s physical presence at resen-tencing would have been “useless, or the benefit but a shadow” given our remand instructions. The circuit court’s resen-tencing did not, and could not, depend on any new evidence from Berget outside of calling Dr. Bean, which Berget declined to do when offered by the circuit court. What remained was for the circuit court to exercise its discretion in rendering its judgment on the same evidence and argument that was presented at the initial sentencing hearing. Because of the unique nature of the alleged error in Berget I, the circuit court only needed to reconsider its findings of fact and conclusions of law by drafting amendments in chambers, filing them with the Clerk of Courts, and serving copies on counsel. The unique posture of the remand begs the question: what was to be gained by having Berget physically present to watch the circuit court deliberate and hand these documents to the clerk? See United States v. Burton, 543 F.3d 950, 953 (7th Cir.2008) (“A criminal defendant has no right to be present in the judge’s chambers when she writes her sentencing memorandum or files it with the clerk.”). Because our instructions in Ber-get I so limited the jurisdiction of the circuit court on remand and Berget had no right to be present in chambers while the circuit court deliberated in reconsidering its sentence without reference to the Dr. Bean admission, the circuit court committed no error in filing new sentencing findings and conclusions outside Berget’s presence.
*67 [¶ 54.] In spite of the distinction between our rules and the federal standard, Berget argues that at least one court (federal) has categorically found due process objections to the absence of a defendant at resentencing, citing United States v. Arrous, 320 F.3d 355, 359 (2d Cir.2003). Arrous, however, engaged in the very same harmless error analysis articulated above to find the defendant’s involuntary absence harmless. Id. at 361-62. In explaining its holding further, the Second Circuit Court of Appeals stated that “defendant’s presence would have made no difference in the second sentencing. The decision whether to strike the restitution order from the judgment or allow Arrous to withdraw his guilty plea was one that rested solely within the discretion of the district court and did not depend on any input from defendant.” Id. at 362.[15] Likewise, in drafting Berget’s resentencing, the circuit court was required to consider the identical, preexisting evidence that Berget and the State presented at the initial sentencing, including Berget’s prior allocution and arguments of counsel. Again, the circuit court’s resentencing based upon our limited remand did not, and could not, depend on any new evidence from Berget outside of calling Dr. Bean, which Berget declined to do. What remained was for the circuit court to exercise its discretion in rendering its judgment on the same evidence and argument that was presented at the initial sentencing hearing. Berget is therefore left without any substantive grounds for asserting he was prejudiced by his physical absence when the circuit court deliberated, filed the sentencing documents with the clerk of courts, and mailed copies to counsel. Accordingly, any error regarding Berget’s physical absence was harmless beyond a reasonable doubt and did not contribute to the verdict obtained. See Larson, 512 N.W.2d at 735.
[¶ 55.] b. Berget’s claim for additional allocution.
[¶ 56.] Similarly, Berget contends that state and federal authority support his right to alloeute before resentenc-ing, which was denied by the circuit court’s refusal to conduct a formal resentencing hearing. To advance this contention, he relies on SDCL 23A-27-1 and this Court’s ruling in State v. Garber, 2004 S.D. 2, 674 N.W.2d 320. The relevant language of SDCL 23A-27-1 is as follows:
Before imposing a sentence, a court may order a hearing in mitigation or aggravation of punishment.... At such hearing, the court shall allow the defense counsel an opportunity to speak on behalf of the defendant and shall address the defendant personally and ask him if he wishes to make a statement in his own behalf and to present any information in mitigation of punishment.
*68 Id. On its face, this language describes the allocution right as arising out of a sentencing hearing ordered by the court. As noted above, the circuit court did not order a new sentencing hearing because it correctly found no basis for it on remand. Berget’s right to allocute was not infringed at his original sentencing hearing, the only sentencing hearing on the record. The plain language of the statute, therefore, does not support Berget’s claim. Moreover, the only relevance of Garber to this analysis is that it referenced in passing that SDCL 23A-27-1 provides a “right of allocution” and nothing more. See 2004 S.D. 2, ¶ 18, 674 N.W.2d at 325. Without further interpretation, SDCL 23A-27-1 does not explicitly govern the type of limited resentencing at issue here, nor does it describe the nature of the allocution right. South Dakota case law appears to be silent in both respects.
[¶ 57.] Berget contends this Court may draw authority from federal case law that purportedly establishes a defendant’s right to allocute at resentencing generally. Federal case law provides that unlike the right to be present, “the right of allocution is not a constitutional one. Rather, the right of allocution derives from the Federal Rules of Criminal Procedure.” United States v. Patterson, 128 F.3d 1259, 1260 (8th Cir.1997) (per curiam) (citations omitted). It has also been described as a common law right that relates to a defendant’s constitutional right to be present at sentencing. See Green v. United States, 365 U.S. 301, 304, 81 S.Ct. 653, 655, 5 L.Ed.2d 670 (1961).
[¶ 58.] Berget relies on the unpublished opinion of United States v. Blake (Blake II), 501 Fed.Appx. 587, 588 (7th Cir.2013), for the proposition that allocution is also a right provided at limited resentencing. Leading up to the case, the Seventh Circuit had entered a limited remand for resentencing in light of United States v. Booker, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), and its repeal of the mandatory nature of the Federal Sentencing Guidelines. See Blake II, 501 Fed.Appx. at 588. The trial court then resentenced Blake, but did not notify him of his ability to speak in his defense. Id. On appeal from the remand, the Seventh Circuit entered a four-sentence unpublished opinion that remanded Blake’s ease for failure to allow allocution. See United States v. Blake (Blake I), 227 Fed.Appx. 506 (7th Cir.2007). Both cases give little support for Berget’s argument. Blake I explicitly stated only the court’s uncertainty whether the denial of Blake’s right of allocution in that particular circumstance was harmless error. Id. at 506, 2007 WL 1875958 at *1. Blake II merely referenced back to Blake I. See Blake II, 501 Fed.Appx. at 588.
[¶ 59.] In contrast, the Ninth Circuit, in its published opinion in United States v. Silva, 472 F.3d 683 (9th Cir.2007), directly addressed a defendant’s right to allocute on limited remand. As with Blake, the Ninth Circuit in Silva had issued a limited remand for resentencing Silva in the wake of Booker. Id. at 685. This limited remand “require[d] the district court to make a subjective determination, based upon a review of the record and the submissions of counsel, as to whether the sentence would have been materially different under advisory Guidelines.” Id. The court noted that because the court properly “evaluated the record, considered the views of counsel, and concluded that he would have chosen the same sentence under a discretionary regime[,]” Silva had “no right ... even to be present during such a limited inquiry, and so by necessary implication ... [authority] does not support a right to allocute therein.” Id. at 686. While the court acknowledged the federal rulemaking and case law authority *69 establishing allocution as a general, necessary component of a criminal defepdant’s due process rights, see id. at 686-87, it further noted, “[W]e have decided that allocution is not always necessary in the case of sentencing error.” Id. at 687. The court illustrated the limits of the allocution right by harkening to its earlier opinion in United States v. Knows His Gun, 438 F.3d 913 (9th Cir.2006). Ip Knows His Gun, the Ninth Circuit affirmed a sentence where the trial court, op remand ip light of Booker, failed to permit allocution. Id. at 920. Recounted later in Silva, the Ninth Circuit noted that the key factor was Knows His Gun’s ability at his original sentencing to present all relevant evidence and to allocute. See Silva, 472 F.3d at 687 (citing Knows His Gun, 438 F.3d at 919-20) (“We affirmed ... because the defendant had already had a chapee to present non-Guidelines evidence áf the original sentencing and needed ho further right to allocute.”). The court theii applied that rationale to Silva, and held that because the limited remand “merely requires review of the record and the views of counsel, due process does not require allocution.” Id. at 687-88.
[¶ 60.] The clear parallels between Berget’s case and Silva indicate that the due process afforded to Berget on limited remand did not implicate Berget’s right to allocution. Like the Ninth Circuit’s directive in Silva, we instrpeted op remand that the circuit court was to conduct its review “on the existing record.” See Berget I, 2013 S.D. 1, ¶ 120, 826 N.W.2d at 37. Akin to Silva, we effectively tasked the lower court with making “a subjective determination, based upon a review of the record and the submissions of counsel, as to whether [Berget’s] sentence would have been [ ] different” absent the improper consideration. See Silva, 472 F.3d at 685. The circuit court then appropriately considered only the existing record, including the prior allocution, and the views of counsel in making its decision. The circuit court was not required to grant additional allocution because Berget was already given a chance to submit all relevant evidence and to allocute at his sentencing hearing. Silva provides that no due process right to allocute exists within the limited remand framework we instructed in Berget I given the similarities of our instructions. This, coupled with SDCL 23A-27-l’s plain language does not support Berget’s interpretation. Berget offers no persuasive authority on which to base his allocution right.
[¶ 61.] Further, even if there were a right of allocution in this instance, any failure of the circuit court to provide Berget this right was harmless error. See United States v. Robertson, 537 F.3d 859, 863 & n. 3 (8th Cir.2008) (applying harmless error analysis to an allocution error). Recognizing the similar nature of the right to be present and the right to allocute (albeit the allocution right involves a lesser, common law concern), see Silva, 472 F.3d at 686, a similar harmless error framework may be applied. This Court’s instruction on remand narrowed the circuit court’s consideration of new mitigating evidence. By this instruction, Berget’s ability to re-allocute, after electing not to introduce Dr. Bean’s testimony, became immaterial. With the removal of Dr. Bean’s report from consideration, the evidence upon which Berget could allocute was the same evidence upon which he allo-cuted at the initial sentencing hearing. Nothing changed. And because the resen-tencing court indicated it would consider his prior allocution, Berget could not have influenced the circuit court’s resentencing decision when all the court had to consider was the preexisting record. Cf. Kost, 344 N.W.2d at 86 (“[Defendant’s] absence from *70 these discussions was not error because his presence was not necessary to defend against the charges.”)- As noted above, the language of SDCL 2BA-37-1 does not provide a right of allocution at this limited resentencing, and even if it did, the resulting error at Berget’s resentencing would be harmless beyond a reasonable doubt because it could not, and would not, contribute to the sentence rendered. See Larson, 512 N.W.2d at 735.
[¶ 62.] Therefore, Berget provides no persuasive authority to support a right to allocution in the limited remand proceedings directed by Berget I. If the court erred in not providing for allocution, that error was harmless. Accordingly, his claim fails.
[¶ 63.] 3. Whether the circuit court erred in not recusing itself prior to resentencing.
[¶ 64.] Berget asserts the circuit court erred by denying his request that the court recuse itself on limited remand, citing the court’s actual and implied judicial bias. This argument stems from Berget’s allegation that the court simply recycled its findings of fact and conclusions of law from those in the case of Berget’s co-defendant, Eric Robert. In his initial brief, Berget characterized this allegation as indicating the court gave his case little consideration, which in turn evidenced bias. Berget now modifies this argument in his reply brief and in oral argument by asserting that the court was “trying to be fair in a situation where no mortal could be.” Berget further explains that the court was more inherently — rather than intentionally — biased because it had to prejudge Berget’s case, having already sentenced his co-defendant on similar findings of fact and conclusions of law. Berget relates that for the court to change its findings from Robert’s case to Berget’s case would be to “call the finality of the [.Robert ] decision ... into question.”
[¶ 65.] Berget admits that SDCL 15-12-24 statutorily precluded his affidavit for change of judge because he submitted argument to the circuit court — admitting guilt and receiving sentence — prior to filing the affidavit. He bases the court’s duty to recuse on a superseding, general constitutional right to a fair trial, citing Nelson, 1998 S.D. 124, ¶ 14, 587 N.W.2d at 445 (citations omitted) (outlining the scope of a right to a fair trial), and Page, 2006 S.D. 2, ¶ 14, 709 N.W.2d at 749 (quoting State v. Hoadley, 2002 S.D. 109, ¶ 32, 651 N.W.2d 249, 257) (“[A] defendant’s ‘opportunity to disqualify a judge is statutory, ... and not a constitutional right, except as it may be implicit in a right to a fair trial.’ ”).
[¶ 66.] This argument fails. Ber-get had argued on direct appeal that similarities between the verdicts from his and Robert’s pre-sentencing hearing indicate a violation of Berget’s right to an individualized sentencing determination under Lockett. Berget I, 2013 S.D. 1, ¶¶ 53-54, 826 N.W.2d at 18-19. This Court rejected that argument. We did so based on our finding that “Berget has not ‘presented any evidence to constitute a legitimate basis on which to call into question the circuit judge’s impartiality.... Absent such a showing that a fair judgment was impossible, it was not error for the circuit judge to sentence [Berget] after sentencing his co-defendant [Robert].’ ” Id. ¶ 54, 826 N.W.2d at 18 (quoting Page, 2006 S.D. 2, ¶ 17, 709 N.W.2d at 751).[16] This finding echoed our prior holdings in Page, 2006 S.D. 2, ¶¶ 15-17, 709 N.W.2d at 750-51, and Hoadley, 2002 S.D. 109, ¶¶ 32-34, 651 N.W.2d at *71 257-58, that the mere fact the circuit court previously sentenced a co-defendant to death does not show the judicial bias, or the “deep-seated favoritism or antagonism,” that overrides the presumption against recusal that the court was impartial. Berget’s attempt to distinguish this case from Page and Hoadley fails. To accept Berget’s argument would prohibit the trying of co-defendants by the same judge in all cases as a matter of law. Berget offers no legitimate indication of the court’s bias to modify our prior analysis. This argument therefore fails.
[¶ 67.] 4. Whether Berget’s sentence was imposed under the influence of passion, prejudice, or any other arbitrary factor.
[¶ 68.] Our analysis of the record indicates no basis for finding Berget’s sentence was imposed under the influence of passion, prejudice, or any other arbitrary factor. See SDCL 23A-27A-12(1). The circuit court’s amended presentence hearing verdict and amended findings of fact and conclusions of law reflect the proper scope of analysis directed by this Court on limited remand. As indicated above, Ber-get’s assertion of circuit court bias, actual and inherent, was shown to have no merit on direct appeal and remains without merit. Berget I, 2013 S.D. 1, ¶ 54, 826 N.W.2d at 18-19. No improper considerations indicating passion, prejudice, or arbitrariness were otherwise evident on direct appeal. Id. ¶ 13, 826 N.W.2d at 11. That continues to be the case here.
[¶ 69.] 5. Whether the evidence supports the circuit court’s finding of statutory aggravating circumstances as enumerated in SDCL 23A-27A-1.
[¶ 70.] We noted in Berget I that evidence introduced at Berget’s sentencing hearing supported, beyond a reasonable doubt, the circuit court’s finding of two statutory aggravating circumstances evident in Ronald Johnson’s murder. See id. ¶¶ 16-17, 826 N.W.2d at 11; see also SDCL 23A-27A-K7) (“The offense was committed against a law enforcement officer, employee of a corrections institution, or firefighter while engaged in the performance of such person’s official duties[.]”); 23A-27A-1(8) (“The offense was committed by a person in, or who has escaped from, the lawful custody of a law enforcement officer or place of lawful confinement[.]”). Since then, Berget has brought forth no evidence or argument to question those holdings. Further inquiry is therefore unnecessary. The evidence supports the circuit court’s finding of the two statutory aggravating circumstances.
[¶ 71.] 6. Whether Berget’s death sentence is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant.
[¶72.] Finally, because “[w]e strictly and purposely limited our remand instructions in [.Berget I] to correct the specific error that had occurred,” see Piper III, 2014 S.D. 2, ¶ 12, 842 N.W.2d at 343, and because Berget acknowledges without objection that all proportionality concerns raised in Berget I were addressed and affirmed by our opinion, our prior proportionality analysis stands, see Berget I, 2013 S.D. 1, ¶¶ 18-31, 826 N.W.2d at 11-14. The record continues to provide no basis for this Court to find Berget’s death sentence to be excessive or disproportionate. In the absence of the Court’s instruction, the aggravating circumstances of Berget’s crime and the remaining aggravating fac *72 tors would nevertheless outweigh any reasonable implications of Berget’s new relationship — no matter how positive — with his son and his son’s family. We conclude that our prior proportionality analysis remains valid and Berget’s death sentence is not excessive or disproportionate in relation to similar cases where the death penalty was imposed.
Conclusion
[¶ 73.] This Court, pursuant to the South Dakota Constitution, possesses the clear authority to direct the jurisdictional scope of a limited remand to the circuit court, and our remand directions in Berget I did not infringe upon any of Berget’s constitutional rights. The limited remand also did not implicate or otherwise violate Berget’s rights to be present and to allocution. Finally, this Court previously rejected, in Berget I, Berget’s judicial bias argument, and he has provided no additional, substantive argument in that regard on this appeal. We therefore affirm his death sentence.
[¶ 74.] ZINTER and SEVERSON, Justices, and MILLER, Retired Justice, concur.
[¶ 75.] KONENKAMP, Justice, dissents.
[¶ 76.] MILLER, Retired Justice, sitting for WILBUR, Justice, disqualified.

. The sentencing court took the matter under advisement and pronouhced its initial sentence four days after t}ie completion of the initial sentencing hearing. There is no dispute Berget had an unrestricted opportunity to present all mitigation evidence he desired the court to consider at the sentencing hearing.

. We also instructed that Berget could "opt[ ] to call Dr. Bean to testify.” Id. ¶ 118, 826 N.W.2d at 37. This was the only new evidence-in addition to the record at the time of sentencing and the arguments of counsel thereon — that the circuit court could have considered for sentencing purposes on remand. The transcript of the remand motions hearing indicates the circuit court repeatedly inquired whether Berget wanted to exercise the option of calling Dr. Bean to testify. Ber-get responded in the negative each time.

. Because of the limited scope of remand and the clarity of the issues presented by both parties, the Court originally anticipated considering this appeal on the written arguments of counsel and without oral argument during its April 2014 Term. That determination is normally at the discretion of the Court. See SDCL 15-26A-82. However, we received notice that the Legislature placed an additional procedural requirement on the Court in cases where a circuit court imposes capital punishment: "Both the defendant and the state shall have the right ... to present oral argument to the court.” SDCL 23A-27A-11. Because Berget exercised that right, we heard oral argument in this matter during the May 2014 Term.

. Although these issues were addressed in the prior direct appeal, and SDCL 23A-27A-12 is silent as to whether they must be addressed on appeal of a limited resentencing, we nevertheless address these questions after analyzing the errors Berget advances on this appeal.

. The circuit court’s findings of fact and conclusions of law entered after its original sentencing indicate that at that time it was *55 known to Berget and the circuit court that Berget had a son.

. Berget does not dispute the State’s assertion, citing State v. Robert, 2012 S.D. 60, ¶ 20, 820 N.W.2d 136, 143 (citing Schriro v. Landrigan, 550 U.S. 465, 479, 127 S.Ct. 1933, 1942, 167 L.Ed.2d 836 (2007)), that mitigation information reasonably discoverable before sentencing is waived when a capital defendant fails to present the evidence at sentencing.

. Our use of the word “weighing” in this context does not contradict the fact that South Dakota is a non-weighing state. See State v. Rhines (Rhines II), 2000 S.D. 19, ¶¶ 52-53, 608 N.W.2d 303, 314. In describing the distinction between weighing and non-weighing states, the Supreme Court has noted, ”[t]he terminology is somewhat misleading, since we have held that in all capital cases the sentencer must be allowed to weigh the facts and circumstances that arguably justify a death sentence against the defendant's mitigating evidence.” Brown v. Sanders, 546 U.S. 212, 216-17, 126 S.Ct. 884, 889, 163 L.Ed.2d 723 (2006) (citing Eddings, 455 U.S. at 110, 102 S.Ct. at 874).

. Berget asserts that because the court received Dr. Bean’s report before the sentencing hearing, its mere existence in the record in that phase of the proceeding — albeit sealed throughout the hearjng — was sufficient to taint the entire sentencing phase. Objectively, however, there was no indication in the hearing transcript or elsewhere that the court improperly considered Berget’s admission to Dr. Bean or unsealed the report until its deliberation in drafting its presentence hearing verdict. The report was not offered into evidence or even mentioned at the sentencing hearing. See Berget I, 2013 S.D. 1, ¶ 94, 826 N.W.2d at 29. In order for the Court to adopt Berget’s argument, we would need tb speculate on the mental processes of the court, which we will not cjo.
If the court erred, then, it did so by improper weighing of mitigation evidence. See Berget I, 2013 S.D. 1, ¶ 118, 826 N.W.2d at 37. That error is an order of magnitude lower than if the court had excludecj mitigating evidence from its consideration. The constitution clearly prohibits exclusion of relevant, mitigating evidence obtained before sentencing in a capital decision. See Lockett, 438 U.S. at 604, 98 S.Ct. at 2964-65. The necessary remedy for violating this prohibition is remand to the circuit coiirt for its consideration of all relevant mitigating evidence. See Eddings, 455 U.S. at 117, 102 S.Ct. at 878. The same cannot be said for the improper consideration of aggravating evidence. The constitution, in fact, permits an appellate court to reweigh the proper evidence and impose the death penajty in response to an error in the trial court’s weighing of the evidence. See Clemons v. Mississippi, 494 U.S. 738, 745, 110 S.Ct. 1441, 1446, 108 L.Ed.2d 725 (1990); Spaziano v. Florida, 468 U.S. 447, 104 S.Ct. 3154, 82 LEd.2d 340 (1984) (approving a state appellate court’s affir-mance of a death conviction by reweighing the aggravating and mitigating evidence after that court’s determination that an aggravating circumstance was improperly submitted to the factfinder). This is particularly true in non-weighing states. See Rhines II, 2000 S.D. 19, ¶ 54, 608 N.W.2d at 315 (quoting Stringer v. Black, 503 U.S. 222, 231-32, 112 S.Ct. 1130, 1137, 117 L.Ed.2d 367 (1992)) ("When the weighing process itself has been skewed, ... harmless-error analysis or reweighing at the trial or appellate level suffices to guarantee that the defendant received an individualized sentence."). That authority is further described by the Supreme Court:
If a person sentenced to death in fact killed, attempted to kill, or intended to kill, the Eighth Amendment itself is not violated by his or her execution regardless of who makes the determination of the requisite culpability; by the same token, if a person sentenced to death lacks the requisite culpability; the Eighth Amendment violation can be adequately remedied by any court that has the power to find the facts and vacate the sentence.
Cabana v. Bullock, 474 U.S. 376, 386, 106 S.Ct. 689, 697, 88 L.Ed.2d 704 (1986), abrogated on other grounds by Pope v. Illinois, 481 U.S. 497, 107 S.Ct. 1918, 95 L.Ed.2d 439 (1987).

. In the past, this Court has not hesitated to require a full sentencing hearing on remand in a death penalty case when the nature of the error warranted that outcome. For instance, in Piper v. Weber (Piper II), 2009 S.D. 66, ¶ 21, 771 N.W.2d 352, 360, we vacated Piper’s death sentence and remanded the matter "for a new sentencing proceeding” because Piper had not validly waived his constitutional right to a jury in the sentencing phase. The constitutional error in Piper II occurred before the sentencing hearing, and the nature of the error affected the entire sentencing proceeding. In contrast, the error prompting Berget’s limited resentencing occurred after the sentence hearing, and did not taint the hearing. Again, only the circuit court’s possible consideration of improper aggravating evidence may have needed correction, requiring a limited remand, if any. See Clemons, 494 U.S. at 745, 110 S.Ct. at 1446.
That potential error, and the limited remand we instructed to address it in Berget I, *58 stands in stark contrast to another case involving a remand for sentencing, State v. Bult (Bult IV), 1996 S.D. 20, 544 N.W.2d 214. Bult IV arose out of our repeated remands to the circuit court, after the court continued to impose life sentences without the possibility of parole and in spite of our repeat conclusions that that sentence constituted cruel and unusual punishment. See State v. Bult (Bult III), 529 N.W.2d 197 (S.D.1995); Bult v. Leapley (Bult II), 507 N.W.2d 325 (S.D.1993). In Bult IV, we established that "the court had an obligation” on remand from Bult III to update the relevant evidence necessary to fashion a sentence, see Bult IV, 1996 S.D. 20, ¶ 12, 544 N.W.2d at 217, which included mitigating evidence. However, Bult TV is clearly distinguishable from the present case. In Bult III, we did not instruct a limited remand as we did in Berget I, but permitted a full sentence hearing on remand because the nature of the error warranted that type of remand. See Bult III, 529 N.W.2d at 200. Our opinion here does not erode Bult IV’s conclusion that at a full sentencing hearing on remand, the defendant is entitled to the rights available at his or her original sentencing. See 1996 S.D. 20, ¶¶ 8-14, 544 N.W.2d at 216-17. What Bult IV did not do was establish a right to update one's mitigation evidence on any remand, or when directly contradicted by our remand instructions as Berget seeks here. Bult IV, in fact, stands for the supremacy of our remand authority, which we reassert here.
Multiple state supreme courts have affirmed similar limited remands of capital sentences. See, e.g., Ex parte Slaton, 680 So.2d 909, 922-23 (Ala.1996), cert. denied, 519 U.S. 1079, 117 S.Ct. 742, 136 L.Ed.2d 680 (1997); People v. Lewis, 33 Cal.4th 214, 14 Cal.Rptr.3d 566, 91 P.3d 928, 937 (2004), cert. denied, 543 U.S. 1178, 125 S.Ct. 1308, 161 L.Ed.2d 163 (2005); Crump v. State, 654 So.2d 545, 548 (Fla.1995) (per curiam).

. On a petition for rehearing in response to this Court’s opinion on direct appeal, Berget offered this same argument, citing Skipper, to cast doubt on the propriety of this Court's limited remand. Thus, we have had two occasions to analyze this argument.

. Only one Ninth Circuit case cited in Davis V actually addresses whether new mitigation evidence, constitutionally speaking, must be admitted at resentencing after the defendant was given the opportunity to present all mitigation evidence at his original sentencing. See 475 F.3d at 782 (Gibbons, Cir. J., concurring) (noting only one case was so "on point"). That case is Creech v. Arave, 947 F.2d 873, 881-82 (9th Cir.1991), overruled on other grounds, 507 U.S. 463, 113 S.Ct. 1534, 123 L.Ed.2d 188 (1993). Creech based its finding that Lockett, Eddings, and Skipper "required that a defendant be allowed to offer such mitigating evidence at resentencing” on the Idaho Supreme Court’s ruling in Sivak v. State, 112 Idaho 197, 731 P.2d 192, 197 (1986). The Ninth Circuit justified its ruling by stating, "Like the Idaho Supreme Court, we see no rational basis for distinguishing the evidence of a defendant's good conduct while awaiting trial and sentencing, and evidence of a defendant’s good conduct pending review of a death sentence which is vacated on appeal.” Creech, 947 F.2d at 881-82 (internal citations omitted). The Idaho Supreme Court’s logic was that if the mitigating relevance of a capital defendant's prison behavior is to show "his probable future conduct at the penitentiary, and hence, the appropriateness of the death penalty as opposed to a life sentence^]” then there is no qualitative difference between pre-sentence and post-sentence prison conduct for mitigation purposes. Sivak, 731 P.2d *60 at 197-98. If anything, according to the Idaho Supreme Court, defendant's behavior in jail awaiting sentencing may be a less reliable indicator of future conduct in the penitentiary than defendant’s actual conduct at the penitentiary post-sentence, making this new post-sentence mitigation evidence more reliable. Id.

. This language is analogous to the Ohio Supreme Court’s logic in Roberts, where it held:
This case ... involves a proceeding on remand for the limited purpose of correcting an error that occurred after the defendant had had a full, unlimited opportunity to present mitigating evidence to the sentencer.
In other words, neither Lockett nor any of its progeny required the trial court to reopen the evidence after an error-free evidentiary hearing had already taken place.
998 N.E.2d at 1108 (second emphasis added).

. Berget’s constitutional claim is also subject to prejudicial or harmless error analysis. See St. John, 2011 S.D. 58, ¶ 10, 804 N.W.2d at 74 (quoting Novak v. McEldowney, 2002 S.D. 162, ¶ 7, 655 N.W.2d 909, 912) (" ‘An evidentiary ruling will not be overturned unless error is demonstrated and shown to be prejudicial error.’"); Smith, 1999 S.D. 83, ¶ 39, 599 N.W.2d at 353; see also 18 U.S.C. § 3595(c)(2)(C) ("The court of appeals shall not reverse or vacate a sentence of death on account of any error which can be harmless, including any erroneous special finding of an aggravating factor, where the Government establishes beyond a reasonable doubt that the error was harmless.”); SDCL 23A-44-14 ("Any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded.”); Sweet v. Delo, 125 F.3d 1144, 1158-59 (8th Cir.1997) (citing Hitchcock v. Dugger, 481 U.S. 393, 399, 107 S.Ct. 1821, 1824-25, 95 L.Ed.2d 347, and Skipper, 476 U.S. at 7-8, 106 S.Ct. at 1672-73) (applying harmless error analysis to a Lockett error); State v. Piper (Piper I), 2006 S.D. 1, ¶ 18, 709 N.W.2d 783, 794-95 (applying a prejudicial error analysis to a capital proceeding). " 'A constitutional violation may constitute harmless error, and thus not require reversal, if the court can declare beyond a reasonable doubt that the error was harmless and did not contribute to the verdict obtained.'” State v. Larson, 512 N.W.2d 732, 735 (S.D.1994) (quoting State v. Schuster, 502 N.W.2d 565, 570-71 (S.D.1993)). See also Chapman v. California, 386 U.S. 18, 22, 24, 87 S.Ct. 824, 827, 828, 17 L.Ed.2d 705 (1967) (articulating the similar federal standard). This harmless error analysis is particularly salient where, as here, there is "ample evidence relating to the circumstances of the murder.” See State v. Rhines (Rhines I), 1996 S.D. 55, ¶ 101, 548 N.W.2d 415, 441. The State has the burden to prove harmless error. State v. Medicine Eagle, 2013 S.D. 60, ¶ 60, 835 N.W.2d 886, 905 (citing State v. Nelson, 1998 S.D. 124, ¶ 8, 587 N.W.2d 439, 443).
The State has proven that the aggravating evidence against Berget is overwhelming beyond a reasonable doubt, thereby negating any claim of constitutional error. Out of all the remaining aggravating evidence — including the brutal nature of the beating and suffocation of Ronald Johnson in carrying out the attempted escape, Berget’s violent criminal history, and the clear existence of the statutory aggravating circumstances of the killing an employee of a corrections institution while Berget was lawfully confined, SDCL 23A-27A-1(7), (8) — none of it would have been called into doubt or otherwise eroded by Ber-get’s evidence of his relationship with his son and his family. This new evidence could not reasonably expunge or mitigate the circumstances of the murder. "The absence of any prejudice is particularly apparent given the horrific nature of the crime.” McGehee v. Norris, 588 F.3d 1185, 1189 (8th Cir.2009) (citation omitted) (applying harmless error analysis to an alleged Lockett error). Additionally, as noted above, future dangerousness was not the central concern of the sentencing authority. It is even unclear how Berget’s relationship with his family will logically affect his future dangerousness. It is also unclear how Berget’s relationship would have resulted in a life sentence given the circuit court’s awareness of Berget’s son and the testimony of Associate Warden Pontow that Berget could serve a life sentence in administrative segregation to "diminish any serious threat of future dangerousness.” See Hall v. Luebbers, 341 F.3d 706, 717 (8th Cir.2003) (deeming the exclusion of mitigating evidence in a capital case harmless error where it was cumulative).
Moreover, it is important to note that "South Dakota law does not require the weighing of aggravating circumstances against mitigating factors[,]” and that a sentencing authority, in the face of all manner of mitigating evidence, "need only find one statutory aggravating factor beyond a reasonable doubt to impose the death penalty.” Page, 2006 S.D. 2, ¶ 50, 709 N.W.2d at 758-59 (citing Rhines II, 2000 S.D. 19, ¶¶ 39 n. 9, 53, 608 N.W.2d at 312 n. 9, 314).
*65 Therefore, "ample evidence” shows the exclusion of Berget’s relationship with his son in the resentencing authority's final consideration was a harmless error beyond a reasonable doubt, if it was error at all. Because the circuit court committed,no prejudicial error, it did not abuse its discretion in excluding this newly discovered evidence, and on these additional grounds, Berget’s constitutional argument fails. See Smith, 1999 S.D. 83, ¶ 39, 599 N.W.2d at 353.

. Kost also does not reference Federal Rule 43. Rather, it reviews our previous case law, which goes back to 1904, and which interpreted Territorial criminal procedure. Kost, 344 N.W.2d at 85 (quoting State v. Swenson, 18 S.D. 196, 204-05, 99 N.W. 1114, 1116 (1904)).

. Berget cites another Second Circuit case, United States v. DeMott, 513 F.3d 55 (2d Cir.2008) (per curiam), for the proposition that it is per se prejudicial (and not harmless) error for a court to impose a sentence on a defendant when not in the defendant’s presence. Berget quotes language in DeMott that appears to support this claim: "Since a new sentence was imposed out of the presence of the defendant, his lawyer, and the prosecutor, we cannot confidently decide there has been no harm.” See id. at 58. However, Berget leaves out much of the court’s analysis, in-eluding its citation to Arrous and its harmless error analysis. Id. (citing Arrous, 320 F.3d at 361) ("The denial of this right is subject to harmless review, but such error is harmless only where it is 'unimportant and insignificant’ in the context of the case, such as where ... 'defendant’s presence would not have affected the outcome.' ”). The DeMott court simply found that defendant's presence at re-sentencing in that case would have affected the outcome, see id., thereby distinguishing it from Arrous and, per the analysis above, Berget’s resentencing.

. Rather, we explained that the similarity in the presentence verdicts’ recitation of facts was the logical and proper result of a court approaching a joint murder by co-defendants. Id. ¶ 52. Here, that analysis also applies with equal effect to Berget's argument on the *71 court’s amended findings of fact and conclusions of law.