#29433-r-SPM
**2022 S.D. 33**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

PESKA PROPERTIES, INC.,                           Plaintiff and Appellant,

     v.

NORTHERN RENTAL CORP.,
a South Dakota Corporation, and
STEVE WILLIS, Individually,                       Defendants and Appellees.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE DOUGLAS E. HOFFMAN
Judge

* * * *

KASEY L. OLIVIER
ASHLEY MILES HOLTZ of
Olivier Miles Holtz, LLP
Sioux Falls, South Dakota

THOMAS J. NICHOLSON of
Nicholson Law
Sioux Falls, South Dakota                         Attorneys for plaintiff and
                                                             appellant.


KENT R. CUTLER
KIMBERLY R. WASSINK of
Cutler Law Firm, LLP
Sioux Falls, South Dakota                         Attorneys for defendant and
                                                             appellee.

                                                     ARGUED
                                                     OCTOBER 6, 2021
                                                     OPINION FILED 06/15/22

#29433

MYREN, Justice

[¶1.] Northern Rental Corporation (Northern) and Steve Willis (Willis) defaulted on their lease agreement (Northern Lease) with Peska Properties, Inc. (Peska Properties) in July 2019. Peska Properties then entered into a lease with Mills Aftermarket Accessories, Inc. (Radco) to fill Willis/Northern's remaining 34-month lease term plus an additional term of 55 months. Peska Properties filed a complaint in circuit court against Willis/Northern for breach of contract requesting unpaid rent, repayment of Northern's build-out loan, payment of Radco's build-out costs, and attorney fees. The circuit court held a bench trial where it calculated damages using a "blended rate" formula based on the per square foot rate over the entire term of Radco's lease. Peska Properties appeals the circuit court's decision. We reverse and remand.

## Facts and Procedural History

[¶2.] On December 23, 2011, Willis, individually and as vice president of Northern, entered into a lease agreement with Peska Properties for a 7,150 square foot retail space in Sioux Falls (Leased Premises). In this retail space, Willis/Northern opened Aaron's, a rent-to-own furniture, electronics, and appliance store. The initial term of the Northern Lease was for ten years, beginning on June 1, 2012, and ending on May 31, 2022. Willis/Northern also had three five-year renewal options to extend the Northern Lease. The rental rate for the Leased Premises was to increase incrementally each subsequent year.

[¶3.] Under the Northern Lease, Willis/Northern would default if they failed to pay rent and did not cure within seven days after receiving written notice of their default. If Willis/Northern defaulted, the Northern Lease stated:

> Upon Default by Tenant, Landlord may pursue any one or more of the following remedies, separately or in any combination: (i) Landlord may terminate this Lease by giving written notice to Tenant, in which event Tenant will vacate the Premises within (30) days of receipt of Landlord's notice, and this Lease will terminate at midnight on the day Tenant so vacates; (ii) with or without terminating this Lease, Landlord may enter and take possession of the Premises and remove Tenant and any other person who may be occupying the Premises; (iii) Landlord may re-let the Premises, or any part thereof, on such reasonable terms and conditions as Landlord may deem satisfactory, and receive the rent for any such re-letting; (iv) Landlord may do whatever Tenant is obligated to do under the terms of this Lease; or (v) any other remedy which Landlord may have at law or in equity; provided, that no such remedy will have the effect of (1) accelerating the due date on which Tenant otherwise would be obligated to make any payment of Rent or Other Charges or (2) requiring Tenant to pay for any improvements or modifications that Landlord may make to the Premises in order to accommodate a replacement for Tenant with a non-retail use. Landlord agrees to use commercially reasonable efforts to mitigate its damages and the resulting liability of Tenant.

Further, paragraph 30 of the Northern Lease allowed:

> In any action, suit or proceeding to enforce, defend or interpret the rights of either Landlord or Tenant under the terms of this Lease or to collect any amounts due Landlord or Tenant hereunder, the prevailing party, pursuant to a final order of a court having jurisdiction over said matter as to which applicable periods within which to appeal have elapsed, shall be entitled to recover all reasonable costs and expenses incurred by said prevailing party in enforcing, defending or interpreting its rights hereunder, including, without limitation, all collector and court costs, and reasonable attorney's fees, whether incurred out of court, at trial, on appeal, or in any bankruptcy proceeding.

Additionally, the Northern Lease required that Willis/Northern leave the alterations it made to the Leased Premises but provided them with "the option to

remove all equipment, signs, back-lit canopies, trade fixtures and personal property installed in or placed on or about the Premises."

[¶4.]     Willis/Northern received a $50,000 loan from Peska Properties to complete a build-out of the Leased Premises. By the terms of the Northern Lease, this $50,000 build-out loan was to be paid back to Peska Properties as additional rent, "calculated by amortizing the total cost of the build-out over the first 10 year term of the Lease at the rate of 8% interest."

[¶5.]     Willis/Northern began paying rent on August 1, 2012, when the Aaron's store opened for business, as specified in the Northern Lease. Willis/Northern decided to close the Aaron's store in March 2017. Despite the store closing, Willis/Northern continued to make rent payments through July 2019.

[¶6.]     On May 15, 2018, Willis/Northern hired a realtor to sublet the Leased Premises. That realtor placed a for-rent sign on the Leased Premises, listed the Leased Premises on the Multiple Listings Services database, and prepared other marketing materials. Gene Peska (Peska) learned Willis/Northern was attempting to sublet the Leased Premises when he saw the for-rent sign.[1] The Leased Premises remained empty because Willis/Northern could not find a tenant to sublease. Nevertheless, Willis/Northern continued to pay the rent specified in the Northern Lease.

---

1.     Gene Peska is the sole shareholder of Peska Properties. Paragraph 17 of the Northern Lease authorized Northern to assign or sublease the property with written consent from Peska Properties. Peska testified that he gave Willis permission to sublease the Leased Premises once he was aware of the situation.

[¶7.] Peska recommended that Willis/Northern list the property with Bill Connelly (Connelly) of NAI Sioux Falls, a real estate agent Peska used regularly. Willis/Northern took Peska's suggestion and hired Connelly on October 8, 2018. Connelly listed the property for $11.20 per square foot. Willis/Northern received their initial offer from Radco on June 6, 2019. Radco's offer was for a five-year lease with two five-year options to renew. It proposed that Willis/Northern would pay full rent for the first five months (5 x $6,527 = $32,635). For the remaining 24 months of the Northern Lease, Willis/Northern would pay $3,027 per month and Radco would pay $3,500 per month ($3,027 + $3,500 = $6,527). Upon the expiration of the original term of the Northern Lease, Radco would pay $11.00 per square foot for the optional terms, with rent increasing by three percent at the beginning of each five-year lease extension. The proposal specified that "Landlord/Aaron's" would "provide" a $30,000 allowance for tenant improvements (build-out allowance). It also provided that "Landlord/Aaron's shall negotiate payment of the allowance to be paid."

[¶8.] Because the offer involved a lease term longer than that which remained on the Northern Lease, Peska became involved in the lease negotiations with Willis/Northern.[2] On June 19, 2019, Willis/Northern and Peska made a counteroffer to Radco that stated:

1. Tenant shall have occupancy on or before July 15th 2019[.]
2. Current time remaining on [the sublease] is 32 months.
3. Tenant shall be given 3 months free rent[.]

---

2. Peska Properties later entered into a listing agreement with Connelly on July 1, 2019, officially making Connelly the listing agent for both Peska Properties and Willis/Northern.

4.  Remaining 29 months at a rate of $9.50 psf[ ] ($5636.70)
month for the first 29 months plus NNN and utilities.
5.  Landlord will sign a new 7 year lease (84 months) @ $9.50 for
the first 29 months and remaining 55 months at $11.00 psf NNN
plus utilities.
6.  Landlord to pay $25,000 toward build out allowance.

[¶9.]     Radco responded with a counteroffer premised on the same terms,
except Radco proposed paying $8.43 per square foot for the first 29 months and
$10.50 per square foot for the remaining 55 months.  Following additional
negotiations, Radco submitted a letter of intent to Willis/Northern and Peska on
July 12, 2019, for a seven-year lease with rent being free for the first three months,
$8.43 per square foot for the remainder of the Northern Lease term, and $11.00 for
the extended term.

[¶10.]     On July 16, 2019, Willis/Northern sent an email to Peska stating he
should talk to his attorney about his duty to mitigate damages, that Willis/Northern
would not pay what Peska was asking for under the Northern Lease, and that
"[Willis] might consider walking away for nothing otherwise we could do [t]he lease
with Radco ourselves."  Willis/Northern sent a second letter to Peska dated July 18,
2019, that stated Peska should accept Radco's offer and notified Peska that all of
Willis/Northern's payment obligations and involvement under the Northern Lease
would end on July 31, 2019.  The letter acknowledged that Willis/Northern owed
rent for July 2019, unpaid triple net expenses, and unpaid build-out costs.  The next
day, Peska sent a letter to Willis/Northern giving them notice of default.  At the end
of July 2019, 34 months remained on the Northern Lease.

[¶11.]     Peska Properties and Radco signed a seven-year lease on August 20,
2019, effective August 1, 2019.  Under the lease, Radco did not have to pay rent for

the first three months and would pay $5,022.88 per month from November 2019 through May 2022[3] and $6,554.12 per month from June 2022 through May 2026.[4] As part of the lease agreement, Peska Properties paid Radco $25,000 for the build-out of the Leased Premises.

[¶12.]    Peska Properties filed a complaint against Willis/Northern for breach of contract seeking unpaid rent, triple net expenses, utilities, repayment for Willis/Northern's build-out loan, repayment for the $25,000 paid towards Radco's build-out allowance, costs associated with procuring a new tenant, attorney fees, and prejudgment and post-judgment interest.  In its answer, Willis/Northern admitted that they stopped making lease and construction payments after July 2019 but denied the nature and extent of the damages claimed by Peska Properties.

[¶13.]    Both parties presented evidence at a bench trial on the amount of damages Peska Properties should recover.  Peska Properties argued that the damages should be calculated by taking the rental payments due for the remaining term of the Northern Lease and subtracting the amount Radco would pay in rent during that time ($72,601.84).  In addition, the damages would include the remaining balance due on Willis/Northern's build-out loan with eight percent interest ($12,155.74) and the $25,000 build-out paid to Radco.  In total, Peska Properties requested damages of $109,757.58.

[¶14.]    Willis/Northern proposed calculating damages by using a "blended rate," which was arrived at by averaging the per square foot amount Radco was

---

3.    This amounts to $8.43 per square foot.

4.    This amounts to $11.00 per square foot.

obligated to pay over the terms of its lease. Willis/Northern also asserted that they should not pay all the $25,000 build-out allowance Peska paid to Radco. They argued that Peska Properties was able to negotiate a low build-out allowance because Radco was able to use the improvements Willis/Northern had made to the property.

[¶15.] Peska testified that he was trying to get the best tenant and rental rate for the Leased Premises. Still, the only offer he received came from Radco. Peska admitted that some of Willis/Northern's tenant improvements were retained for use by Radco. He also admitted that the build-out allowance paid to Radco was low.

[¶16.] Connelly, the real estate agent for both Peska Properties and Willis/Northern, testified regarding the rental prices under the Radco lease as follows:

> Q: [Willis/Northern's counsel] Okay. Well, let's just take the sublease part out of it. What did you think the fair market value of that location was when you listed it for Northern Rental?
>
> A: [Connelly] Probably somewhere between $9.00 [per square foot] to $10.50 [per square foot] at best.
>
> Q: Okay. Well, then why, why would Radco have agreed to pay Gene Peska $11 a square foot for the extended term?
>
> A: Well, they didn't. I mean if you take the combined over seven years they didn't.
>
> Q: Right. I, I've done that calculation, the blended rate, I believe, over the entire terms, about ten dollars and eleven cents a square foot or something like that.[5] Does that sound right to you?

---

5. The record shows there was a question of the exact number of months that remained under Northern's Lease at trial, which explains the $10.11 per square foot amount. The circuit court determined that 34 months remained at the time of Willis/Northern's breach. This number was used in calculating the circuit court's blended rate of $9.70 per square foot.

A:      Sounds about right.

Connelly also testified that having Radco as a tenant benefited Peska Properties because it increased traffic count to the other tenants present in the building and increased the value of the building.

[¶17.]      During the trial, the circuit court asked why Radco would only pay $8.43 per square foot for the remaining 34 months of the Northern Lease and then pay $11.00 per square foot for the extended term of Radco's lease. Peska Properties' counsel responded that this was the offer Radco tendered and noted that Willis was part of those negotiations. The circuit court revisited this topic later during the trial:

> Q:      [Circuit court] So, answer this question for me, and then you're in really good shape. What is the commercial justification for having rent at $8.43 for the first 29 months, and at eleven bucks starting on month thirty?
>
> A:      [Counsel for Peska Properties] I think, Your Honor, the answer to that is that is the offer that Radco was willing to pay. There is the lease that they said, we'll pay $8.43 for these months, and then will pay $11. And that's what they were willing to pay.
>
> Q:      So, what was the big difference between month 29 and month 30 that justified a thirty percent bounce?
>
> A:      Because it's allowing . . . the amounts that were negotiated were negotiated between what Radco was willing to pay and the most that they could get them to pay.
>
> Q:      Why would Radco say we'll pay you $8.43 for 29 months, and then we'll pay you $11 starting on month thirty for another, you know, four years?
>
> A:      I'm not sure. Those are the offers that they came in with. Those are the final numbers they came [sic]. Nobody benefits. Gene doesn't benefit by being here today. If he could have negotiated for the full amount of Steve Willis' [sic] lease, we wouldn't be here.

[¶18.] Ultimately, the circuit court determined that the most reasonable manner of calculating the damages Peska Properties suffered was by using a "blended rate." It also decided that there was no "prevailing party," and neither party was entitled to attorney fees or costs. Both parties submitted proposed findings of fact and conclusions of law, and Peska Properties objected to Willis/Northern's proposed findings of fact and conclusions of law.

[¶19.] On September 10, 2020, the circuit court entered its findings of fact, conclusions of law, and judgment. The circuit court explained that using the "blended rate" of $9.70 per square foot was "the most commercially reasonable manner to calculate the balance due under Northern's Lease" because "as a matter of law it is not commercially reasonable for Peska Properties to receive above fair market rent during the 55-month extended term and Northern and Willis to receive below fair market rent credit during the remaining 34 months of their Lease." The circuit court also concluded that Willis/Northern and Peska Properties should each pay a proportionate share of Radco's $25,000 build-out allowance based on their share of Radco's lease term. The circuit court explained that Peska Properties benefited because Northern left alterations on the Leased Premises, reducing renovation costs and contributing to the low build-out allowance. Willis/Northern also benefitted because, without the $25,000 being paid for the build-out, Radco would not have filled the remainder of the Northern Lease. In total, the court

determined that Willis/Northern owed Peska Properties $68,729.82.[6] Peska

Properties appeals.

## Analysis and Decision

### 1. Whether the circuit court erred in determining the damages Peska Properties incurred under the Northern Lease.

[¶20.]        "[T]he amount of damages to be awarded is a factual issue to be

determined by the trier of fact." *Weekley v. Wagner*, 2012 S.D. 10, ¶ 13, 810 N.W.2d

340, 343 (quoting *Roth v. Farner-Bocken Co.*, 2003 S.D. 80, ¶ 26, 667 N.W.2d 651,

662). A "trial court's findings on damages will not be disturbed on appeal unless

they are clearly erroneous." *Ducheneaux v. Miller*, 488 N.W.2d 902, 915 (S.D. 1992)

(citing *Tri-State Refin. & Inv. Co., Inc. v. Apaloosa Co.*, 452 N.W.2d 104, 109 (S.D.

1990)). "In applying this standard, we will overturn the findings of the trial court

only when, after review of all the evidence, we are left with a definite and firm

conviction that a mistake has been made." *Tri-State Refin. & Inv. Co., Inc.*, 452

N.W.2d at 109 (citing *Mobridge Cmty. Indus., Inc. v. Toure, Ltd.*, 273 N.W.2d 128,

131 (S.D. 1978)). However, "[w]e give no deference to the circuit court's reading of a

contract as contract interpretation is a question of law that is reviewed de novo."

---

6.        The circuit court's damages award is comprised of the following sums: Willis/Northern's unpaid rent plus interest through July 2020 ($11,833.38); ongoing monthly rent ($935.48) at the "blended rate" for the 34 months remaining on its original lease after July 2020 ($31,806.32); build-out balance plus interest ($12,155.74); 38% proportional share of the Radco build-out allowance ($10,747); an agreed adjustment between the parties regarding the real estate agent commissions ($2,606.88); and a credit towards Willis/Northern for an overpayment on outstanding invoice ($419.50).

#29433

*Stern Oil Co., Inc. v. Brown*, 2018 S.D. 15, ¶ 37, 908 N.W.2d 144, 156 (citing *Tri-City Assocs., L.P. v. Belmont, Inc.*, 2014 S.D. 23, ¶ 9, 845 N.W.2d 911, 915).

[¶21.]     Peska Properties argues that the circuit court should have assessed its damages under the Northern Lease by a straight calculation based on the lost rent of $72,601.84.[7]  Peska Properties contends that the circuit court erred as a matter of law in determining that a "blended rate" was the commercially reasonable calculation for damages rather than calculating the damages based upon the actual loss sustained by Peska Properties under the Northern Lease.  Peska Properties argues that the "blended rate" failed to restore them to the position they would have occupied had Willis/Northern not breached the Northern Lease.  Peska Properties also claims the circuit court erred when it proportionately divided the cost of Radco's $25,000 build-out allowance between Peska Properties and Willis/Northern based on their proportionate shares of Radco's new lease term.  The $12,155.74 to be paid to Peska Properties for the outstanding Willis/Northern build-out loan was undisputed.

[¶22.]     "[T]he ultimate purpose behind allowance of damages for breach of contract is to place the injured party in the position he or she would have occupied if the contract had been performed, or to 'make the injured party whole.'"  *Wright v. Temple*, 2021 S.D. 15, ¶ 42, 956 N.W.2d 436, 449 (quoting *Stern Oil Co., Inc.*, 2018 S.D. 15, ¶ 16, 908 N.W.2d at 151).  "To successfully recover contract damages, a

---

7.     Peska arrived at this figure by calculating that the total rent still due under Northern's Lease was $228,311 and that Radco was to pay $155,709.16 during the unexpired term of Northern's Lease, leaving a balance of $72,601.84. ($228,311 - $155,709.16 = $72,601.84).

litigant must first prove 'that damages were in fact caused by the breach.'" *Excel Underground, Inc. v. Brant Lake Sanitary Dist.*, 2020 S.D. 19, ¶ 50, 941 N.W.2d 791, 805 (quoting *McKie v. Huntley*, 2000 S.D. 160, ¶ 18, 620 N.W.2d 599, 603). "[D]amages must be reasonably certain" and not speculative. *Id.* ¶ 51, 941 N.W.2d at 805.

[¶23.] "In proving damages, the party must . . . [demonstrate] 'a reasonable relationship between the method used to calculate damages and the amount claimed.'" *Lamar Advert. of S. Dakota, Inc. v. Heavy Constructors, Inc.*, 2008 S.D. 10, ¶ 14, 745 N.W.2d 371, 376 (quoting *FB & I Bldg. Prod., Inc. v. Superior Truss & Components, A Div. of Banks Lumber, Inc.*, 2007 S.D. 13, ¶ 20, 727 N.W.2d 474, 480). There is no "specific formula for calculating damages," but there must be "a rational basis for measuring loss." *McKie*, 2000 S.D. 160, ¶ 18, 620 N.W.2d at 603. "Any doubt persisting on the certainty of damages should be resolved against the contract breaker." *Id.* ¶ 20, 620 N.W.2d at 604 (citation omitted). "Damages must in all cases be reasonable, and where an obligation of any kind appears to create a right to unconscionable and grossly oppressive damages, contrary to substantial justice, no more than reasonable damages can be recovered." SDCL 21-1-3. Moreover, a party cannot "recover a greater amount in damages for the breach of an obligation than he could have gained by the full performance." SDCL 21-1-5.

## DAMAGES FOR LOST RENT

[¶24.] In assessing damages for breach of the Northern Lease by Willis/Northern, we start with the remedies provided in the agreement. The Northern Lease provided that "[u]pon default by [Willis/Northern], [Peska

-12-

Properties] may pursue any one or more of the of the following remedies," including to "re-let the Premises, or any part thereof, on such reasonable terms and conditions *as* [*Peska Properties*] *may deem satisfactory*, and receive the rent for any such re-letting[.]" (emphasis added). The Northern Lease further provided that "[Peska Properties] agrees to use commercially reasonable efforts to mitigate its damages and the resulting liability of [Willis/Northern]." Thus, the lease authorized Peska Properties to re-let the Premises, upon default by Willis/Northern, on terms satisfactory to Peska Properties. Peska Properties' authority to re-let the premises on satisfactory terms was subject to a reasonableness requirement and an obligation to "use commercially reasonable efforts to mitigate its damages[.]"

[¶25.]     It is undisputed that Willis/Northern defaulted under the terms of the Northern Lease by failing to pay rent in July 2019. In August 2019, Peska re-let the premises to Radco for a term of seven years, which included the remaining 34 months of the Northern Lease. There was no dispute about the amount of rent owed during the remaining 34 months of the Northern Lease or the amount of rent Radco agreed to pay under the new lease for the Premises. If Willis/Northern had fulfilled their obligations under the Northern Lease, Peska Properties would have received $228,311 in rent for the remaining 34 months of the lease term. Instead, under the lease with Radco, Peska Properties will receive only $155,709.16 for rent from Radco during that same period. Consequently, Peska Properties will receive $72,601.84 less rent than it would have received had the Northern Lease been fully performed.

[¶26.]    Despite the unambiguous terms of the Northern Lease requiring Willis/Northern to pay rent for the remaining 34 months of the lease term and the undisputed evidence concerning the amount of rent Peska Properties would receive from Radco during this time, the circuit court calculated damages by utilizing a "blended rate," between the rent owed under the Northern Lease and the additional future rent Peska Properties would receive from Radco after the Northern Lease would have expired.  To support this "blended rate," the circuit court found "as a matter of law that [the blended rate was] the most commercially reasonable manner to calculate the balance due under Northern's Lease[.]"  The circuit court's use of a "blended rate" for calculating the damages due under the remaining 34 months of the Northern Lease was erroneous because the circuit court's decision did not place Peska Properties in the position it would have been in had the Northern Lease been fully performed by Willis/Northern.  The circuit court should have calculated the damages based upon the undisputed evidence showing the difference between the rent Willis/Northern would have paid during the remaining 34 months of the Northern Lease, less the rent Peska Properties was to receive for the months under the Radco lease.

[¶27.]    Importantly, the circuit court made no findings that Peska Properties failed to take reasonable steps to mitigate its damages during the remaining term of the Northern Lease.  Instead, it concluded as a matter of law that it was not "commercially reasonable" "to allow [Peska Properties] to mitigate its damages during Northern's remaining term at $8.43 psf, with a 30% increase in rent to $11.00 psf the first month of the new 55-month extended term[.]"  However, Peska

Properties provided a commercially reasonable explanation—that this was all that Radco was willing to pay.

[¶28.] The circuit court made no findings that Gene Peska or Peska Properties acted unreasonably or in bad faith during the negotiations. Additionally, the circuit court made no finding that Peska Properties manipulated Radco's offer to disadvantage Willis/Northern. Further, the circuit court did not explain its rejection of the possibility that Radco had its own business reasons for wanting a lower rental rate at the beginning of the lease term.

[¶29.] The record shows that, despite the efforts of Willis/Northern and Peska Properties, the Leased Premises sat empty for over two years with no prospective replacement tenants other than Radco. During this time, Peska Properties permitted Willis/Northern to market and attempt to sublease the property to another tenant. Radco held an advantageous bargaining position that allowed it to request the terms it believed were best for its new business. There is no evidence in the record that Radco's offer was driven by anything other than its own business needs. Moreover, Willis/Northern and Peska employed the same experienced real estate broker to list the property on the open market to find a replacement tenant. The circuit court made no findings or conclusions that these endeavors did not constitute "commercially reasonable efforts to mitigate damages."

[¶30.] Without findings supporting that Peska Properties failed to act reasonably in mitigating its damages, the circuit court concluded that "as a matter of law it is not commercially reasonable for Peska Properties to receive above fair market rent during the 55-month extended term and Northern and Willis to receive

below fair market rent credit during the remaining 34 months of their Lease." This was an error based upon the absence of any evidence that Peska Properties failed to *use commercially reasonable efforts to mitigate its damages* pursuant to the terms of the Northern Lease.

[¶31.]     The issue of contract damages is generally a question of fact, but on this record, there is no dispute that Peska Properties sustained $72,601.84 in damages as a result of the breach of the Northern Lease by Northern/Willis. Further, the evidence demonstrates, as a matter of law, that Peska Properties made commercially reasonable efforts to mitigate its damages under the Northern Lease. *See Arrowhead Ridge I, LLC v. Cold Stone Creamery, Inc.*, 2011 S.D. 38, ¶ 22, 800 N.W.2d 730, 736–37 (determining as a matter of law that a new trial was unnecessary on the issue of mitigation "as the record establishes that [landlord] mitigated its damages by the exercise of reasonable diligence as a matter of law."). We remand to the circuit court to enter a judgment for damages for lost rent in favor of Peska Properties consistent with this decision.

## RADCO'S BUILD-OUT ALLOWANCE

[¶32.]     Peska Properties paid a $25,000 build-out allowance to Radco as part of the new lease.  Both parties agreed this build-out allowance was necessary to obtain a new tenant.  Because both Peska Properties and Willis/Northern benefited from the new lease with Radco, the circuit court found it reasonable to share the build-out allowance costs.  The circuit court determined that it was reasonable to apportion the build-out allowance over the entire Radco lease and allocate the cost

of that allowance between Peska Properties and Willis/Northern based on their proportional share of the whole lease term.[8]

[¶33.]     Peska Properties argues the circuit court erred by proportioning Radco's build-out allowance between the parties. Willis/Northern supports the circuit court's decision by noting that they left warehouse shelves, counters, and some flooring that helped entice a new renter and reduce build-out costs.

[¶34.]     A build-out allowance was necessary to attract a replacement tenant. While Willis/Northern and Peska Properties both wanted a new tenant, the only reason a new tenant was necessary was because Willis/Northern wanted out of its lease. Ultimately, Willis/Northern breached its lease. This breach forced Peska Properties to agree to provide Radco with a $25,000 build-out loan to secure Radco as a replacement tenant. If Willis/Northern had fully performed on its lease, Peska Properties would not have incurred this expense. Willis/Northern received the benefits of the improvements they left behind because these improvements contributed to a low build-out allowance. Therefore, the circuit court's proportional award was an error of law because it failed to meet the ultimate goal of a damage award—to return Peska Properties to the position it would have occupied if the

---

8.     The Northern Lease provides in paragraph 28(b) that, upon default by the tenant, the landlord cannot require the tenant to "pay for any improvements or modification that the Landlord may make to the Premises in order to accommodate a replacement Tenant with a non-retail use." There is no evidence that Radco intended to use the Leased Premises for a non-retail purpose and Willis/Northern make no argument that this or any other provision of the Northern Lease prevents Peska Properties from recouping the cost of these improvements to make the premises suitable for Radco.

contract had been performed. On remand, the circuit court is directed to re-calculate the build-out allowance damages consistent with this opinion.

>    **2.     *Whether the circuit court abused its discretion in determining that Peska Properties was not the prevailing party and not awarding them attorney fees or costs.***

[¶35.]     Willis/Northern conceded they breached the Northern Lease and owed damages. The principal issue at trial was the amount of damages owed by Willis/Northern because of its breach. Both parties pursued their theory of damages, and the circuit court adopted Willis/Northern's damages theory. The circuit court determined there was no "prevailing party" and ordered each to bear their own costs and attorney fees. Considering our reversal of the damages award, it is appropriate for the circuit court to reconsider its decision regarding attorney fees and costs. As stated in paragraph 30 of the lease agreement,

>    In any action, suit, or proceeding to enforce, defend or interpret the rights of either Landlord or Tenant under the terms of this Lease or to collect any amounts due Landlord or Tenant hereunder, the prevailing party, pursuant to a final order of a court having jurisdiction over said matter as to which applicable periods within which to appeal have elapsed, shall be entitled to recover all reasonable costs and expenses incurred by said prevailing party in enforcing, defending or interpreting its rights hereunder, including, without limitation, all collector and court costs, and reasonable attorney's fees, whether incurred out of court, at trial, on appeal, or in any bankruptcy proceeding.

Accordingly, we vacate the circuit court's attorney fees determination and remand for further proceedings consistent with this decision and the lease agreement.

## Conclusion

[¶36.] We reverse the circuit court's damages award and vacate its decision regarding attorney fees and costs and remand for further proceedings consistent with this decision.

[¶37.] JENSEN, Chief Justice, and KERN, SALTER, and DEVANEY, Justices, concur.