#29876-a-SRJ
**2022 S.D. 68**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

J. CLANCY, INC.,                                    Plaintiff and Appellee,

v.

KHAN COMFORT, LLC, previously
known as KHAN DEVELOPMENT,
LLC; GHAZANFAR KHAN, individually;        Defendants and Appellants,

and

FIRST INTERSTATE BANK, a
Montana Banking Corporation;
BLACK HILLS COMMUNITY
ECONOMIC DEVELOPMENT, INC.,
a South Dakota Non-Profit Corporation;
UNITED STATES SMALL BUSINESS
ADMINISTRATION; BKM ENTERPRISES,
INC. d/b/a WATCO POOLS, a Montana
Corporation; RAPID FIRE PROTECTION,
INC., a South Dakota Corporation; and
LAWRENCE COUNTY, a political
subdivision of the State of South Dakota,        Defendants.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FOURTH JUDICIAL CIRCUIT
LAWRENCE COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE MICHELLE K. COMER
Judge

* * * *

CONSIDERED ON BRIEFS
AUGUST 30, 2022
OPINION FILED **11/09/22**

\* \* \* \*

SCOTT SUMNER
Rapid City, South Dakota

Attorney for defendants and appellants.


TIMOTHY J. BARNAUD
Belle Fourche, South Dakota

Attorney for plaintiff and appellee.

#29876

JENSEN, Chief Justice

[¶1.]        J. Clancy, Inc. (J. Clancy) filed this action against Ghazanfar Khan

and Khan Comfort, LLC (Khan), alleging claims for nonpayment under a contract

for renovations of a Spearfish, South Dakota, hotel.  Khan answered and filed a

counterclaim alleging J. Clancy had failed to complete all the renovations.  The

circuit court determined following a trial that J. Clancy had breached a series of

implied-in-fact contracts by failing to substantially perform the work and awarded

Khan a judgment against J. Clancy for overpayment.  On appeal, this Court

reversed, concluding as a matter of law that J. Clancy and Khan had entered into

an express contract for the renovations (Contract).  *J. Clancy, Inc. v. Khan Comfort,

LLC*, 2021 S.D. 9, ¶ 45, 955 N.W.2d 382, 397 (*J. Clancy I*).

[¶2.]        On remand, the circuit court found, based upon the original trial

record, that J. Clancy had fully performed under the terms of the Contract and that

Khan had breached the Contract by failing to make timely payments.  The court

entered a judgment in favor of J. Clancy.  Khan appeals the circuit court's decision

on remand, asserting that differences between the circuit court's initial findings of

fact and conclusions of law and those entered on remand necessarily amount to

clear error and abuse of discretion.  We affirm.

**Factual and Procedural Background**

[¶3.]        In reversing the circuit court's decision in *J. Clancy I*, we observed that

"the terms of the series of implied-in-fact contracts found by the trial court were not

the same as the express terms of the [Contract].  This vital distinction change[d]

how a party may be found to be in breach and the remedies available to the parties."

-1-

*Id.* ¶ 28 n.8, 955 N.W.2d at 392 n.8. We explained the parties' responsibilities under the Contract as follows: "J. Clancy had the right to demand progress payments from [Khan], after providing invoice statements. Notably, [Khan] did not have authority to hold back progress payments even if the goods were not yet delivered. Further, if [Khan] did not provide J. Clancy progress payments within ten days, J. Clancy had the right to immediately stop construction." *Id.* ¶ 28, 955 N.W.2d at 392.

[¶4.] We remanded for the circuit court to consider the factual questions of whether either party had breached the Contract and the amount of damages. In so doing, we specifically authorized the circuit court to "rely upon the existing evidence in the record regarding the materials and labor found to have been provided by J. Clancy, and the sums [Khan] paid for the agreed-upon items." *Id.* ¶ 29 n.10, 955 N.W.2d at 392 n.10. We further authorized the court to "*adopt or modify its original findings, or enter new findings as the court deems necessary*, to conform with our determination that the duties and obligations of the parties are governed by the express terms of the written contract." *Id.* (emphasis added).

[¶5.] On remand, the court and parties agreed to rely on the existing trial record. Neither party sought to offer additional evidence. The parties then submitted written briefs and proposed findings of fact and conclusions of law. On October 8, 2021, the circuit court entered its findings of fact and conclusions of law (findings of fact on remand), determining that Khan's failure to timely pay invoices

billed by J. Clancy was a material breach of the Contract.[1]  The court found that J. Clancy fully performed the work and provided the goods and materials required by the Contract.  On the question of J. Clancy's performance under the Contract, the court found Mr. Clancy and his foreman, Mr. Moore, to be more credible than Mr. Khan.  In particular, the court found that Khan had failed to provide timely notice of any unsatisfactory or incomplete work at the time of the final walkthrough with the foreman, as required by the Contract, and had failed to complain about any workmanship on the project for months thereafter.

[¶6.]      On the question of damages, the court found that the two mechanic's liens filed by J. Clancy accurately reflected the outstanding balances owed under the Contract and under the terms of an earlier agreement for replacement of vanities and fitness equipment at the hotel.  The circuit court entered a judgment in favor of J. Clancy for breach of contract and foreclosure of the mechanic's liens in the amount of $105,135.33, plus prejudgment interest and attorney fees and costs.

[¶7.]      Khan raises several issues on appeal, which we restate as follows:

1.  Whether the circuit court's findings of fact on remand as to J. Clancy's performance were clearly erroneous because they differ from the initial findings of fact.

2.  Whether the circuit court's findings of fact on remand as to Khan's breach of payment obligations were clearly

---

1.      J. Clancy started the project in September and began submitting invoices for payment to Khan on November 7, 2012, for material and labor it claimed exceeded the initial 50% down payment of $154,000.  Following numerous subsequent invoices and J. Clancy's demands for payment, Khan sent J. Clancy two $35,000 checks on December 4, 2012.  Khan did not make further payments.  J. Clancy continued working and paying subcontractors until it left the project in February 2013.

erroneous because they differ from the initial findings of fact.

3.     Whether the circuit court's judgment for foreclosure of the mechanic's liens and award of attorney fees in favor of J. Clancy was an abuse of discretion because it previously determined on the same record that Khan prevailed.

**Standard of Review**

[¶8.]     We examine findings of fact for clear error. *Eagle Ridge Ests. Homeowners Ass'n v. Anderson*, 2013 S.D. 21, ¶ 12, 827 N.W.2d 859, 864; SDCL 15-6-52(a). "[T]he credibility of the witnesses, the import to be accorded their testimony, and the weight of the evidence must be determined by the trial court, and we give due regard to the trial court's opportunity to observe the witnesses and examine the evidence." *Anderson*, 2013 S.D. 21, ¶ 12, 827 N.W.2d at 864 (quoting *Hubbard v. City of Pierre*, 2010 S.D. 55, ¶ 26, 784 N.W.2d 499, 511). "[T]he amount of damages to be awarded is a factual issue to be determined by the trier of fact." *Peska Props., Inc. v. N. Rental Corp.*, 2022 S.D. 33, ¶ 20, 976 N.W.2d 749, 755 (alteration in original) (citation omitted). The "[circuit] court's findings on damages will not be disturbed on appeal unless they are clearly erroneous." *Id.* (citation omitted). "Doubts about whether the evidence supports the court's findings of fact are to be resolved in favor of the successful party's 'version of the evidence and of all inferences fairly deducible therefrom which are favorable to the court's action.'" *Osman v. Karlen & Assocs.*, 2008 S.D. 16, ¶ 15, 746 N.W.2d 437, 443 (citations omitted).

**Analysis and Decision**

[¶9.] Khan takes issue with the circuit court's findings of fact on remand that differ from findings originally entered by the court. Khan argues the circuit court clearly erred and committed an abuse of discretion in its findings pertaining to J. Clancy's performance, Khan's breach of payment obligations under the Contract, and the award of Contract damages to J. Clancy.[2]

### 1. *Circuit court's inherent powers and effect of this Court's mandate.*

[¶10.] Khan argues that the unexplained change between the initial findings of fact the circuit court entered and its findings of fact on remand is inherently suspect. Khan complains that the circuit court gave "no explanation for this change of heart" and criticizes the "failure of the [circuit court] to provide a rationale and justification on remand for its wholesale revision . . . based on precisely the same evidentiary record[.]"

[¶11.] Our mandate clearly permitted and indeed required the circuit court to reconsider its factual findings and legal conclusions in light of our holding that the provisions of the Contract controlled as a matter of law. The main thrust of Khan's argument is that the initial findings of fact were supported by the evidence, and therefore the findings of fact on remand that depart from the original findings are clearly erroneous, regardless of whether the evidence in the record supports the

---

2. Although Khan argues the court abused its discretion in changing its findings of fact, Khan cites no authority for such a review or determination. All the issues relating to the disparity in the findings are properly reviewed by this Court for clear error. Khan's brief cites cases outlining our abuse of discretion standard of review but offers no explanation for how they apply to review of findings of fact on remand.

court's findings on remand. The circuit court's initial findings of fact, however, are not the baseline from which we must assess clear error. Rather, we review the record to determine whether the evidence supports the court's findings of fact. The clear error standard of review, which we apply to initial findings of fact and findings of fact on remand alike, reflects the possibility that more than one conclusion may be reasonably drawn from the evidence by the fact finder. Therefore, we need not compare findings of fact on remand to the vacated initial findings of fact to decide which most closely align with what a fact finder could have reasonably determined from the evidence.

[¶12.] Further, the fact that this case comes before us on appeal for the second time has no impact on the standard of review because our reversal in *J. Clancy I* nullified the initial findings of fact. "[This] Court is the highest court of the state," S.D. Const. art. V, § 2, and vested with the "authority to mandate the scope of review on limited remand." *State v. Berget*, 2014 S.D. 61, ¶ 17, 853 N.W.2d 45, 52.[3] Thus, "the scope of the circuit court's jurisdiction [on remand] must conform to the dictates of our opinion." *State v. Piper*, 2014 S.D. 2, ¶ 10, 842 N.W.2d 338, 343. This protects "the defined roles of our tiered judicial system . . . and the judicial certainty and efficiency they foster[.]" *Id.* We have explained "that

---

3. In *Berget*, we reversed, and our mandate on remand specifically limited the circuit court to resentence the defendant without reference to a particular report, but "the entire case [was] not reopened[.]" 2014 S.D. 61, ¶ 17, 853 N.W.2d at 52 (quotation omitted). In contrast, our mandate in *J. Clancy I* reopened all questions of fact. Aside from our holding that the Contract controlled as a matter of law, our mandate permitted the court to "adopt or modify its original findings, or enter new findings[,]" without limitation. *J. Clancy I*, 2021 S.D. 9, ¶ 29 n.10, 955 N.W.2d at 392 n.10.

'[t]he mandate of this court ordering a reversal of a judgment without other direction nullifies the judgment, findings of facts, and conclusions of law, and *leaves the case standing as if no judgment or decree had ever been entered.*'" *Gluscic v. Avera St. Luke's*, 2002 S.D. 93, ¶ 20, 649 N.W.2d 916, 920 (citation omitted). Thus, we must approach our clear error review of the findings of fact on remand with a clean slate, without reference to the initial findings of fact from *J. Clancy I.*

[¶13.] Khan argues that the apparent inconsistencies in the circuit court's findings on remand as compared to its findings following the first trial require reversal of the circuit court's decision on remand. Khan cites no controlling authority for the requirement Khan would impose on the circuit court to justify its departure from its initial findings of facts and proposes—without support—that we should apply a principle analogous to the law of the case doctrine in this situation.

[¶14.] The law of the case doctrine "deals with the application of legal principles to particular facts as found by the courts and does not purport to prohibit a change in fact findings, regardless of whether or not new evidence is introduced." V.G. Lewter, Annotation, *Power of the Trial Court, On Remand for Further Proceedings, to Change Prior Fact Findings as to Matter Not Passed Upon By Appellate Court, Without Receiving Further Evidence*, 19 A.L.R.3d 502 (1968). Further, while there is no South Dakota opinion on point, North Dakota has held that "the general rule is a trial court has the power to reverse its findings of fact without receiving new evidence." *Johnson Farms v. McEnroe*, 656 N.W.2d 1, 4 (N.D. 2002).

[¶15.]     Across jurisdictions, there seems to be a consensus that what a circuit court may do "depend[s] upon the result intended by the appellate court in its mandate and opinion." Lewter, *supra*. "[T]he lower court can do nothing that is in conflict with the mandate and opinion of the appellate court . . . [but otherwise] the lower court may reconsider its former findings of fact, with or without the admission of new evidence." Lewter, *supra*. Here, again, we explicitly authorized the circuit court to revisit its findings of fact on remand. The extent to which the circuit court was constrained in its conclusions on remand by our instructions in *J. Clancy I* merely reflects the essential structure of our appellate court system.

[¶16.]     Our mandate in *J. Clancy I* "le[ft] the case standing as if no judgment or decree had ever been entered." *Gluscic*, 2002 S.D. 93, ¶ 20, 649 N.W.2d at 920 (citation omitted). Therefore, the circuit court's actions on remand are within the parameters of its decision-making authority.

### 2.     J. Clancy's performance.

[¶17.]     In challenging the circuit court's findings of fact on remand that J. Clancy had fully performed, Khan highlights that in the initial findings of fact, the court found J. Clancy did not complete installation of various light and plumbing fixtures, doors, or wall coverings. Khan also points to the circuit court's turnabout in its witness credibility findings on the issue of J. Clancy's proof of performance of its contract obligations as indicative of error. In the initial findings of fact, the circuit court found Khan more credible on that issue, while on remand, it found J. Clancy more credible.

[¶18.]     However, Khan's arguments fail to appreciate the circuit court's reorientation as to what constituted breach under the terms of the Contract. The circuit court initially considered the question of breach in the context of having concluded that several implied contracts, which did not include any specific terms for payment, had been created between the parties, and the court viewed the evidence from the perspective that J. Clancy had to prove substantial performance of each contract to recover under a quantum meruit theory. The circuit court on remand was tasked with resolving the question of which party breached the express Contract and the amount of damages sustained under the Contract. In considering the parties' performance under the terms of the Contract, the circuit court found that Khan breached the Contract by failing to timely pay invoices, and that such breach justified J. Clancy stopping work under the Contract.

[¶19.]     Additionally, the Contract language required Khan to provide written notice of any defects or deficiencies within seven days of the walkthrough with the foreman. The circuit court found on remand that Khan failed to provide such notice in February 2013.[4] Once the court made this finding and found that Khan had failed to make timely payments that were due under the Contract in November, Khan's belated claims about J. Clancy's lack of performance may very well have

---

4.     The final day of work was February 22, 2013, yet Khan expressed no dissatisfaction until July 25, 2013, after J. Clancy had filed the mechanic's liens and this action against Khan. At trial, Khan claimed to have paid subcontractors to finish the work but provided no evidence of payments related to the Contract. In *J. Clancy I*, we noted "[t]he ledgers [showing payments] were not from [this business], but rather, were from ledgers connected to various other properties owned by Khan." 2021 S.D. 9, ¶ 7 n.1, 955 N.W.2d at 387 n.1.

rung hollow to the court. The record supports the court's finding that Khan did not comply with the Contract's limited timeframe for raising concerns regarding defects or deficiencies in the work, and we find no clear error.[5]

### 3. Khan's breach of payment obligations.

[¶20.] Khan likewise argues that the circuit court erred because it initially found that Khan had overpaid J. Clancy for the work actually performed yet found in its findings of fact on remand that J. Clancy could recover the outstanding balances under the Contract and change orders.[6]

[¶21.] Here, again, the record supports the court's findings of fact on damages. Having determined that Khan breached the Contract, the court had to calculate damages. "For the breach of an obligation arising from contract, the measure of damages . . . is the amount which will compensate the party aggrieved

---

5. Khan gave inconsistent testimony that supports the circuit court finding a lack of credibility. For example, Khan testified that J. Clancy was responsible for the entire product improvement plan but later admitted their agreement covered only part of what the franchisor required. Khan also testified that J. Clancy was to blame for a lien Khan later admitted predated their work together. And Khan testified that J. Clancy owed Khan for lodging J. Clancy's employees at the hotel during the upgrade before admitting that they had agreed, as was their custom, to save money by having them stay and work there during the off season instead of J. Clancy billing Khan for the cost of making other arrangements.

6. Khan also argues that Ghazanfar Khan, individually, cannot be held liable because the circuit court found as much in its initial findings of fact, and J. Clancy did not raise that issue on appeal. Our holding in *J. Clancy I* that the Contract controls permitted the circuit court on remand to reassess the evidence through the lens of that document. That the circuit court had found Khan was not liable under the implied contract has no bearing on the issue of Khan's personal liability under the Contract. The Contract was signed by Ghazanfar Khan personally, as owner, and does not list a corporate entity as a party. Khan does not provide any legal argument or authority for the claim that he is not personally liable under the Contract.

for all the detriment proximately caused thereby[.] No damages can be recovered for a breach of contract which are not clearly ascertainable in both their nature and their origin." SDCL 21-2-1. "Once the fact of damages has been established, uncertainty over the *amount* of damages is not fatal to recovery." *ISG, Corp. v. PLE, Inc.*, 2018 S.D. 64, ¶ 26, 917 N.W.2d 23, 32 (citations omitted). Here, there was evidence that Khan breached the Contract by failing to pay J. Clancy and that J. Clancy had been damaged by the breach.

[¶22.] The balances reflected in the mechanic's liens were a rational starting point. Even if all of the work was not completed, as claimed by Khan, Khan failed to provide J. Clancy with timely written notice under the Contract that work was deficient or incomplete. Additionally, the franchisor approved the hotel upgrade based on the work done by J. Clancy. Although Khan later attempted to challenge the extent of performance and the proportionality between the work yet to be done and the outstanding balance owed, the circuit court did not find that Khan proved Khan paid others to complete the work.

[¶23.] Once the circuit court determined Khan breached by nonpayment, J. Clancy was entitled to the Contract balance, plus additional work performed under the change orders, absent some other showing by Khan. It was appropriate for any doubt to be resolved against Khan as the party in breach. *See Peska Props., Inc.*, 2022 S.D. 33, ¶ 23, 976 N.W.2d at 756 ("Any doubt persisting on the certainty of damages should be resolved against the contract breaker.") (citation omitted). "[W]e have stated that 'the amount of damages does not need to be proven with absolute exactness' and have affirmed an award's amount based solely on the testimony of a

plaintiff." *ISG, Corp.*, 2018 S.D. 64, ¶ 28, 917 N.W.2d at 32 (citation omitted). We are not left with a definite and firm conviction that the circuit court erred with respect to its calculation of damages, and therefore Khan has failed to demonstrate any error on the last issue raised concerning the judgment foreclosing the mechanic's liens and awarding attorney fees to J. Clancy.[7]

[¶24.]    Affirmed.

[¶25.]    KERN, SALTER, DEVANEY, and MYREN, Justices, concur.

---

7.    Khan argues that we would need to reverse these issues if we were to reverse the circuit court's factfinding determinations concerning breach of contract and damages. However, Khan has not asserted any error by the circuit court in entering a judgment of foreclosure of the mechanic's liens or any abuse of discretion in awarding attorney fees. "[W]e employ the abuse of discretion standard when reviewing a grant or denial of attorney fees." *Taylor v. Taylor,* 2019 S.D. 27, ¶ 15, 928 N.W.2d 458, 465.